CC-1998-98                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Juan R. Costa Wood y Carlos A. Piovanetti Rivera<br><br>    Recurrentes<br><br>    v.<br><br>Caguas Expressway Motors, Inc. y Caguas Advertising, Inc.<br>    Recurridos | Certiorari<br><br>99 TSPR 187 |
|---|---|

Número del Caso: CC-1998-0098

Fecha: 29/12/1999

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Jeannette Ramos Buonomo

Abogado de la Parte Recurrente: Lcdo. Carlos A. Piovanetti Rivera

Abogados de la Parte Recurrida: Lcdo. Agustín Mangual Hernández

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Juan R. Costa Wood,
Carlos A. Piovanetti
Rivera

  Demandante y Recurrente

      v.                                    CC-1998-98        Certiorari

Caguas Expressway Motors,
Inc. y Caguas Advertising,
Inc.

  Demandado y Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 29 de diciembre de 1999.


¿Un anuncio que tiende a crear confusión en torno al precio de los bienes a la venta puede ser rectificado, mediante la publicación, **en otro periódico**, de la "corrección"?

Resolvemos que, a tenor con las disposiciones de lo requerido por el Art. 21 del Reglamento de Prácticas y Anuncios Engañosos, no puede considerarse como adecuada y razonable una "corrección" que se publica en un medio informativo distinto a aquel en que se publicó el anuncio que se pretende rectificar.

Formatted

I

La parte querellada Caguas Expressway Motors, Inc. (en adelante Caguas Expressway) publicó en el periódico El Nuevo Día, edición del 10 de agosto de 1995, un anuncio titulado **"Caguas Expressway Continúa...Barriendo El Lote"**[1]. En el anuncio se ofrecían para la venta varios automóviles usados o de años anteriores, entre los que aparecía una foto de un automóvil tipo guagua marca Ford, modelo Explorer (en adelante Explorer) y otro de la misma marca, modelo Taurus (en adelante Taurus), ambos del 1994. El único precio que aparecía en el recuadro que contenía las fotos de la Explorer y el Taurus era el de $12,795.00. El mismo se encontraba entre las dos fotos, debajo de la foto de la Explorer, al lado derecho de la del Taurus.

Motivados por dicho anuncio, el mismo 10 de agosto de 1995 el co-querellante Sr. Juan R. Costa Wood se comunicó vía telefónica con el Sr. Angel L. Vega, vendedor de Caguas Expressway Motors, e inquirió sobre las unidades Explorer mencionadas en el anuncio. Según alega el señor Costa Wood, en esa conversación se le informó: 1) que tenían disponibles para la venta dos unidades según indicado en el anuncio y que las mismas eran nuevas y sin millaje; 2) que una de las guaguas era azul a dos tonos y 4 x 4 y la otra era "beige" a dos tonos; y 3) que el precio era según el anuncio publicado. El Sr. Angel L. Vega también le informó que había cuatro autos (modelo Taurus, todos del 1994); dos color gris, uno verde y uno azul, pero que tenían millaje.

Durante dicha conversación el Sr. Juan R. Costa Wood notificó al Sr. Luis Vega que le interesaban los vehículos Explorer y que próximamente pasaría a examinarlos con el co-querellante Lcdo. Carlos A. Piovanetti, quien también interesaba una de las Explorer disponibles.

Así las cosas, Caguas Expressway publicó otro anuncio en el periódico El Vocero de Puerto Rico (en adelante El Vocero) el 14 de

---

[1] Véase anejo I.

Formatted

agosto de 1995[2].  Este anuncio era idéntico al que se publicó el 10 de agosto en El Nuevo Día, sólo que esta vez, la imagen del Taurus y la Explorer fueron separadas por una raya trazada entre ambos, quedando el precio de $12,795 en el encasillado del Taurus.

El 14 de agosto por la tarde los señores Costa Wood y Piovanetti, acompañados por la esposa del señor Piovanetti, fueron a Caguas Expressway a comprar las dos Ford Explorer anunciadas.  El Sr. Angel L. Vega les informó en ese momento que el precio de $12,795.00 correspondía a los vehículos Taurus indicados en el anuncio y no a las Explorer. Además, el vendedor les indicó que sólo quedaba una unidad disponible de la Explorer y que el precio de ésta era de $23,000.00. De los documentos presentados, que forman parte del expediente administrativo, surge como hecho incontrovertido que en la entrada de Caguas Expressway no se encontraba ni copia del anuncio recién publicado en el periódico El Vocero, ni una notificación al consumidor de que sólo quedaba una unidad disponible.

Los querellantes insistieron en que debía honrarse el precio que aparecía en el anuncio del periódico ya que daba la impresión de que el mismo era el de ambos vehículos. Caguas Expressway se negó a tal pedido. Ante esta situación los señores Piovanetti y Costa Wood presentaron una querella ante el Departamento de Asuntos del Consumidor (en adelante el D.A.C.O.).

Los querellantes solicitaron que el D.A.C.O. determinara que el anuncio era engañoso y que el mismo no había sido corregido por la parte querellada.  También solicitaron al D.A.C.O. que le exigiese a Caguas Expressway demostrar que la otra unidad había sido vendida entre el día 10 de agosto y el día 14 del mismo mes.

El D.A.C.O. celebró una vista administrativa el 12 de marzo de 1996. El 21 de junio de ese mismo año emitió una resolución en la cual determinó lo siguiente en sus "Conclusiones de Derecho":

---

[2] Vease anejo II.

Formatted

"La prueba desfilada demostró que el anuncio publicado por la parte querellada el 10 de agosto de 1995 en el periódico El Nuevo Día es un anuncio que podría inducir a confusión. Sin embargo, para la fecha en que los querellantes reclamaron a las querelladas que le honraran la oferta, dicho anuncio había sido rectificado, de manera que del mismo surgía claramente que el precio de los vehículos Explorer no era de $12,795.00".

Conforme a este escueto análisis de derecho esbozado por el Oficial Examinador se ordenó el archivo de la querella. Cabe señalar que el Oficial Examinador no tomó ninguna determinación sobre la alegación de que la parte querellada solamente tenía disponible una de las unidades ofrecidas en el anuncio publicado el 10 de agosto.[3] Tampoco se analizó el hecho de que el comerciante no colocó, en el lugar donde expone para la venta el bien o servicio, una corrección al anuncio publicado el 10 de agosto de 1995.

De esta resolución, los peticionarios solicitaron revisión judicial ante el Tribunal de Circuito de Apelaciones. El foro apelativo confirmó la resolución del D.A.C.O.

Inconformes, los querellantes acuden ante nos. Señalan como único error la siguiente cuestión:

"Que el Departamento de Asuntos del Consumidor cometió error al concluir que el anuncio publicado el día 14 de agosto de 1995 en el periódico El Vocero corrigió el anuncio publicado en el periódico El Nuevo Día el día 10 de agosto de 1995."

Así las cosas, el 12 de mayo de 1998 expedimos el auto de certiorari. Habiendo las partes presentado sus respectivos alegatos, estamos en posición para resolver.

Como ya hemos señalado, el D.A.C.O. determinó que el anuncio publicado el 10 de agosto de 1995 en El Nuevo Día, "es un anuncio que podría inducir a confusión". Esta determinación no está en controversia. Lo que está planteado ante este Foro es si el D.A.C.O.

---

[3] De los documentos sometidos por las partes surge que la unidad "beige" Explorer había sido vendida el 29 de julio de 1995, doce días antes de publicarse el anuncio que motivó la querella.

Formatted

erró al determinar que hubo una adecuada corrección del anuncio del 10 de agosto de 1995. Veamos.

                          II
    La Ley Orgánica del D.A.C.O., Ley Núm 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. sec. 341e(j), faculta al Secretario de dicha Agencia para "reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio...". Esta facultad la ejerció el Secretario mediante la promulgación del Reglamento de Prácticas y Anuncios Engañosos del 3 de octubre de 1990 (en adelante el Reglamento), en el cual expresamente se prohíben las prácticas y los anuncios engañosos.

    El Artículo 6 de dicho Reglamento establece los siguientes principios básicos:

> "A. El comerciante debe entregar o prestar diligentemente el bien o servicio según anunciado u ofrecido.
>
> B. El comerciante debe estar en posición de sostener y probar todos los reclamos y ofertas que se proponga hacer, antes de publicarlos o manifestarlos.
>
> C. Un anuncio podrá ser engañoso tomado como un todo, aún cuando cada expresión tomada independientemente sea cierta.
>
> D. La falsedad podrá resultar no sólo de las expresiones directas y de las inferencias que razonablemente cree, sino también de la omisión u oscurecimiento de datos relevantes.
>
> E. Se interpretará en forma adversa al anunciante cualquier afirmación en un anuncio que se preste a interpretaciones distintas, una de las cuales fuere engañosa."

    Asimismo, el Artículo 5(D) define como anuncio engañoso: "cualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda a comunicar una idea falsa o incorrecta sobre lo anunciado".[4]

    Por su parte, el Artículo 21 del Reglamento exige que:

---

[4] El Artículo 13 establece expresamente que el comerciante deberá tener disponibles para la venta los bienes ofrecidos en cantidades suficientes para responder a la demanda durante el periodo de efectividad de la venta anunciada.

Formatted

"Todo comerciante que descubra un error en un anuncio suyo antes de publicarlo deberá corregirlo inmediatamente.

Si descubre el error con posterioridad a la fecha de publicación, deberá publicar la información correcta de manera adecuada y razonable, **colocando además copia de la corrección en el lugar donde expone para la venta o vende el bien o servicio objeto de la corrección.**

Antes de la publicación de la información correcta, el comerciante honrará la oferta a los consumidores que actúen motivados por el anuncio erróneo."

Cabe destacar que el Reglamento, en su artículo 4, establece que: "**Este reglamento deberá interpretarse liberalmente a favor del consumidor**".

Sabido es que las determinaciones de hecho de una agencia administrativa serán sostenidas por los tribunales si se basan en evidencia sustancial que obre en el expediente administrativo. Ahora bien, las conclusiones de derecho serán revisables por los tribunales en todos sus aspectos. Ley de Procedimiento Administrativo Uniforme, Sección 4.5, 3 L.P.R.A. sec. 2175.  No obstante, como regla general los tribunales le reconocen gran peso y deferencia a las interpretaciones hechas por la agencia administrativa encargada de poner en vigor una ley.  No empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de injusticias. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, res. el 2 de abril de 1998, 98 TSPR 39. Tampoco ha de prevalecer la interpretación de la agencia cuando la misma produce resultados inconsistentes con o contrarios al propósito del estatuto interpretado.  Calderón et al. v. Adm. de los Sistemas de Retiro, 129 D.P.R. 1020 (1992).  Véase además, De Jesús Cotto v. Dept. de Servicios Sociales, 123 D.P.R. 407 (1989).

Formatted

Conforme a la legislación[5] y reglamentación vigente que prohíbe los anuncios engañosos, y a los principios de Derecho Administrativo aplicables, determinamos que la resolución del D.A.C.O. resolviendo que el anuncio del 14 de agosto de 1995 en el periódico El Vocero constituyó una corrección del anuncio del 10 de agosto de 1995 en el periódico El Nuevo Día, es irrazonable y errónea.

III

Como hemos visto, el citado Artículo 21 del Reglamento no establece la forma específica en que se deben llevar a cabo las correcciones de anuncios engañosos o que contengan errores, que ya han sido publicados. Sin embargo, sí exige que todo comerciante que luego de la publicación del anuncio descubra un error en el mismo, publique **la información "correcta" de manera "adecuada y razonable".**

"Corrección" significa específicamente la acción de rectificar lo errado. Sin embargo, los términos "adecuada" y "razonable" son inherentemente ambiguos. Determinar si una corrección es adecuada y razonable conlleva un análisis caso a caso en el que el juzgador debe preguntarse si la corrección logró eliminar o mitigar la posibilidad de que los consumidores actúen motivados por el anuncio engañoso o errado. Al llevarse a cabo este análisis deberá prestarse particular atención al efecto y alcance del error, en comparación con el efecto y alcance de la corrección. **Por lo tanto, para que una corrección sea**

---

[5] Antes de la creación del D.A.C.O. en el 1973, 3 L.P.R.A. sec. 341e, y de la promulgación del reglamento que hoy analizamos, la Ley Núm. 148 del 27 de junio de 1968 (ley que creó la Administración de Servicios al Consumidor, predecesora del D.A.C.O.) ya prohibía las prácticas engañosas. Este artículo que continúa en vigor como parte de los poderes y facultades transferidas al D.A.C.O., establece:

"Se prohibe todo tipo o clase de acto, práctica, anuncio o publicidad que constituya o tienda a constituir fraude o engaño, en donde el artículo, producto o servicio sea falsamente representado o que cree en el consumidor una imagen o impresión errónea sobre la marca, precio, cantidad, tamaño, calidad, cualidad, salubridad o cualquier otra característica del producto, artículo o servicio."

Para un análisis del alcance de este artículo y de los criterios a utilizarse al momento de determinar si un anuncio tiende a engañar, véase Garage Rubén, Inc. **v.** Tribunal Superior, 101 D.P.R. 236 (1973).

Formatted

**"adecuada y razonable" debe tener, al menos, el mismo alcance que el "error" que se pretende rectificar.**

Como una "corrección" para ser adecuada y razonable debe, presumiblemente, alcanzar a los mismos consumidores que estuvieron expuestos al anuncio errado o engañoso, la misma no debe aparecer en un periódico distinto a aquel en que apareció el anuncio que se pretende corregir. El periódico en el que apareció el anuncio engañoso o errado es, de ordinario, el medio idóneo para alcanzar a todas aquellas personas que podrían actuar confiados en el anuncio que se pretende rectificar. Por ende, publicar en un periódico distinto la "corrección" de un anuncio que tiende a engañar, no puede considerarse adecuado y razonable ya que, ausente prueba en contrario, no debe presumirse que el consumidor tiene acceso a algún otro medio de información que no sea aquel que contenía el anuncio que lo condujo a actuar. Por esta razón entendemos que erró el D.A.C.O. al interpretar que el anuncio publicado el 14 de agosto de 1995 en el periódico El Vocero podía considerarse, una corrección adecuada y razonable del anuncio del 10 de agosto de 1995, aparecido en el periódico El Nuevo Día.

Además de ser irrazonable e incorrecta la interpretación del oficial examinador del D.A.C.O. en cuanto a la adecuacidad y razonabilidad de la "corrección" publicada en El Vocero el 14 de agosto de 1995, el oficial examinador ignoró un requisito que impone el propio Reglamento para que una corrección excuse prospectivamente al comerciante de responsabilidad. El Artículo 21 del Reglamento expresamente exige que se coloque una copia de la corrección en el lugar donde se expone para la venta o vende el bien o servicio objeto de la corrección.

Debemos recordar que la prohibición de prácticas y anuncios engañosos persigue evitar que el consumidor acuda a un comercio motivado por un engaño o error del comerciante. Siendo el objetivo principal de esta reglamentación el proteger al consumidor, evitando

Formatted

que el comerciante obtenga beneficios de sus prácticas engañosas, es de vital importancia el que se satisfaga este requisito adicional. Esto es así porque precisamente existe la posibilidad de que el consumidor no lea el periódico todos los días o no acuda a la misma fuente de información diariamente. Por lo tanto, es imprescindible, para que una corrección sea adecuada y razonable, que además de ser publicada en el mismo medio de información en que se publicó el anuncio engañoso o errado, se coloque copia de la misma en la entrada del establecimiento. De esta forma se le brinda la opción al consumidor de no entrar, si su única motivación para acudir al comercio era la información engañosa o errada.

Por último, cabe señalar que el oficial examinador del D.A.C.O. inexplicablemente desatendió el planteamiento de los peticionarios en cuanto a la disponibilidad de las unidades anunciadas y el hecho de que la cantidad de unidades disponibles nunca fue ni ha sido corregida por el comerciante.

Por estas razones, entendemos que las conclusiones de derecho de la resolución del D.A.C.O. son irrazonables y contrarias tanto a la letra clara del Reglamento como a los propósitos que llevaron a la Legislatura a crear el D.A.C.O. para vindicar e implementar los derechos del consumidor. 3 L.P.R.A. sec. 341b. Por ende, las mismas no merecen nuestra deferencia.

Ausente una adecuada corrección del anuncio del 10 de agosto de 1995 que, como estableció la resolución del D.A.C.O., "puede inducir a confusión", procede revocar la resolución del foro apelativo. Devolvemos el caso al D.A.C.O. para que, conforme a sus amplios poderes, dictamine el remedio a concederse, y la multa que en estos casos proceda.

Se dictará la Sentencia correspondiente.


FEDERICO HERNANDEZ DENTON

CC-1998-98

Formatted

JUEZ ASOCIADO

JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan R. Costa Wood,
Carlos A. Piovanetti
Rivera

  Demandante y Recurrente

     v.                  CC-1998-98       Certiorari

Caguas Expressway Motors,
Inc y Caguas Advertising,
Inc.

  Demandado y Recurridos

SENTENCIA

San Juan, Puerto Rico, a 29 de diciembre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente Sentencia, se revoca la resolución del Tribunal de Circuito de Apelaciones. Se devuelve el asunto al Departamento de Asuntos del Consumidor (D.A.C.O) para que determine el remedio a concederse, y la multa que proceda en el presente caso.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

CC-1998-98                                                              Formatted

**Costa Wood y Piovanetti Rivera**

    **Demandante-recurrente**

      **vs.**               **CC-1998-98**        **CERTIORARI**

**Caguas Expressway Motors, Inc.**
**y Caguas Advertising, Inc.**

    **Demandada-recurrida**


    **OPINION DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ**

      **San Juan, Puerto Rico, a 29 de diciembre de 1999**


    En el caso que ocupa nuestra atención en el día de hoy, el Tribunal resuelve que el anuncio mediante el cual una persona, o compañía, pretendae corregir o rectificar un anuncio anterior, --el cual, conforme la reglamentación del Departamento de Asuntos del Consumidor ( D.A.C.O.), constituíauye, o cualificaba como, un "anuncio engañoso"-- dicho anuncio rectificador tiene que ser publicado en el <u>mismo</u> periódico en que se publicó anteriormente el "anuncio engañoso".

    En apoyo del establecimiento de dicha norma jurisprudencial -- producto la misma de un craso acto de legislación judicial-- el Tribunal     Formatted
aduce que: para "....que una corrección sea 'adecuada y razonable' debe tener, al menos, el mismo alcance

que el 'error' que se pretende rectificar"; que como "...una corrección para ser adecuada y razonable debe, presumiblemente, alcanzar a los mismos consumidores que estuvieron expuestos al anuncio errado o engañoso inicialmente, la misma no debe aparecer en un periódico distinto aquél en que apareció el anuncio que se pretende corregir"; y que, "[p]or ende, publicar en un periódico distinto la 'corrección' a un anuncio que tiende a engañar no puede considerarse adecuado y razonable ya que, ausente prueba en contrario, no debe presumirse que el consumidor tiene acceso a algún otro medio de información que no sea aquél que contenía el anuncio que lo condujo a actuar." (Enfasis suplido.)

Es de notar que para llegar al establecimiento de dicha errónea y sorprendente norma jurisprudencial --a lo cual llega el Tribunal utilizando un no menos erróneo y sorprendente razonamiento-- la Mmayoría de los integrantes del Tribunal no solo incurren en un craso acto de legislación judicial sino que hacen caso omiso de unas sabias normas jurisprudenciales, sobre deferencia judicial, y, peor aun, de las graves y onerosasabsurdas consecuencias que la norma hoy establecida tendrá en nuestra jurisdicción. Veamos.

I

Como, incluso, se señala en la propia Opinión mayoritaria eEl Artículo 21 del Reglamento de Prácticas y Anuncios Engañosos del 3 de octubre de 1990, promulgado por el Secretario del Departamento de Asuntos del Consumidor, al amparo de las disposiciones de la Ley Orgánica de dicho Departamento[6], "no establece la forma y manera específica en que se deben llevar a cabo las correcciones de anuncios errados o engañosos que ya han sido publicados". Todo lo que establece, y requiere, dicha disposición reglamentaria, en lo pertinente, es que el comerciante, luego de percatarse que se cometió el error, publique la información correcta de manera adecuada y razonable; esto es, que se

corrija, o rectifique, el error cometido de manera pública y en forma adecuada y razonable.

En otras palabras, es claro que s de notar que la disposición reglamentaria en controversia no exige que se publique la corrección en el mismo periódico, ni en el mismo día de la semana en que publicó el anuncio que se pretende rectificar, ni tan siquiera que se utilice el mismo medio publicitario. Lo único que se exige, en realidad, es que se corrija el error en forma adecuada y razonable, dándole publicidad a dicha corrección.

**La Mayoría, sin embargo, en un craso e impermisible acto de legislación judicial establece el requisito de que si el anuncio erróneo o engañoso se publicó en un periódico en particular, la corrección tiene que publicarse en ese mismo periódico. Es decir, conforme sentencia la Mayoría, si, en el presente caso, Caguas Expressway Motors se hubiera embarcado en una masiva campaña de radio y televisión con el propósito de rectificar el error cometidoanuncio publicado en un periódico, dicha campaña no hubiera tenido valor alguno ya que, conforme expresa la Mayoría, no se alcanza a los mismos consumidores que leyeron el anuncio original.[7]**

II

Ello sencillamente es absurdo.[8]

**II**

**Sabido es que la aplicación e interpretación administrativa de una ley, por aquellos organismos particularmente encargados de ponerla en vigor y velar porque sus fines se cumplan, merece gran consideración y**

---

[6] **Ley Número 5 del 23 de abril de 1973.**

[7] **De igual forma, si se "publica" un "anuncio engañoso" en una estación de radio en particular, el comerciante no rectificaría su error aun cuando pagara páginas enteras en todos los periódicos del País corrigiendo dicho error. Ello es absurdo.**

[8] **Hay cientos de ejemplos para demostrar lo absurdo de la norma hoy implantada: si se "publica" un "anuncio engañoso" en una estación de radio en particular, el comerciante no rectificaría su error aun cuando pague páginas enteras en todos los periódicos del**

Formatted

respeto por los tribunales ya que son dichas agencias las que cuentan con una vasta experiencia y conocimiento en la materia que atienden a diario. A.R.P.E. v. Ozares Pérez, 116 D.P.R. 816, 821 (1986); Torres González v. Star Kist, 134 D.P.R. 1024, 1035 (1994). Es por ello que nos hemos autoimpuesto la norma de que no intervendremos en los quehaceres de las agencias administrativas más allá de lo que sea realmente necesario. Agosto Serrano v. F.S.E., 132 D.P.R. 866, 879 (1993).

Conforme se establece en la Ley de Procedimiento Administrativo Uniforme --en adelante, L.P.A.U.[9]-- las determinaciones de hechos realizadas por una agencia administrativa serán sostenidas, en revisión, por los tribunales si las mismas están sostenidas por evidencia sustancial obrante en el expediente administrativo. 3 L.P.R.A. sec. 2181. Hemos definido evidencia sustancial como aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. Hilton Hoteles v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953).

En esa misma línea de pensamiento, hemos decidido que para que un tribunal pueda determinar que no existe evidencia sustancial que sostenga las determinaciones realizadas por la agencia administrativa es necesario que la parte afectada demuestre que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el paso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada...y hasta el punto que se demuestre claramente que la decisión [administrativa] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Hilton Hoteles v. Junta de Salario Mínimo, ante, a la pág. 686; Metropolitana S.E. v. A.R.P.E., Opinión y Sentencia de __ de _____ de 1995 (95 J.T.S. 39).

---

País corrigiendo dicho error. Ello, conforme la Mayoría, porque no se alcanza a los mismos consumidores que escucharon el anuncio original.

[9] 3 L.P.R.A. sec. 2175.

¿Cuáles son los hechos reales --referentes a los anuncios aquí en controversia-- que tuvo ante sí el Departamento de Asuntos del Consumidor, hechos que le llevaron, en el ejercicio de la discreción que posee, a archivar la querella presentada contra Caguas Expressway Motors? Examinémoslos.

**Como parte de una campaña publicitaria, Caguas Expressway Motors publicó una serie de anuncios-ofertas en los que <u>únicamente</u> anunciaban la venta de un auto modelo Taurus por el precio de doce mil setecientos noventa y cinco dólares ($12,795.00). El <u>primero</u> de los anuncios en cuestión, fue publicado en el periódico El Nuevo Día, el <u>4 de agosto de 1995</u>; en el mismo, <u>repetimos</u>, únicamente se anunciaba el Taurus para la venta.**

**El <u>segundo</u> anuncio, publicado el <u>10 de agosto de 1995</u>, también en el periódico El Nuevo Día, incluía esa oferta y <u>añadía</u> la venta de una guagua Ford Explorer del 1994. Debajo del nombre que identifica el modelo de la guagua se incluyó la frase "Al mejor precio".**

**Dos días después, <u>el 12 de agosto de 1995</u>, y en el mismo periódico, entiéndase, El Nuevo Día, Caguas Expressway publicó exactamente el mismo anuncio, a excepción de la inclusión de una raya horizontal que divide los espacios entre la foto del vehículo Explorer y la del auto Taurus. Esa raya es similar a la que posteriormente se publicó en el rotativo El Vocero y que, a juicio del Departamento de Asuntos del Consumidor, (D.A.C.O.), corrigió la confusión que pudo haber ocurrido con la publicación eje de esta controversia.**

El <u>14 de agosto de 1995</u>, Caguas Expressway <u>publicó nuevamente</u> el anuncio que contenía ambas ofertas --la de la guagua Explorer y la del auto Taurus-- añadiendo como elemento gráfico una raya que dividía ambas ofertas pero, contrario a la que se incluyó en el anuncio del 12 de agosto de 1995, esta tenía una pendiente que hacía todavía más evidente la división entre ambos vehículos y los precios anunciados. Este anuncio fue publicado en el periódico El Vocero.

Si es que, como resuelve la mayoría de los integrantes del Tribunal, el anuncio en que se rectifica el anuncio engañoso tiene que ser publicado en el mismo periódico, puesto que únicamente así se "alcanza" el mismo consumidor que leyó el anuncio engañoso, tenemos que el aquí querellante debió haber sabido, desde un principio, que el precio de $12,975.00 se refería exclusivamente al automóvil Taurus y no a la guagua Explorer; ello por la sencilla razón de que de los cuatro (4) anuncios publicados, en tres (3) de ellos era claro que dicho precio se refería al Taurus, habiendo sido dos (2) de esos tres (3) anuncios publicados en el mismos periódico, esto es, en el periódico El Nuevo Día.

Aparte de lo anteriormente expresado debemos ser conscientes de un hecho que, sin lugar a dudas, tuvieron que considerar todos los funcionarios del D.A.C.O. que intervinieron en este procedimiento administrativo, cual es, el que cualquier persona razonable tenía que percatarse del hecho de que el precio de $12,975,00 no podía referirse a una guagua Ford Explorer de sólo un año de uso. Esto es, la diferencia en precio era de tal envergadura que cualquier persona prudente y razonable se hubiera percatado de que se trataba de un error. Lo que persigue la legislación en controversia es que el incauto no sea presa de comerciantes inescrupulosos. En otras palabras, somos del criterio que los funcionarios del D.A.C.O. se percataron del hecho obvio de que el aquí querellante era un "jaiba" que pretendía aprovecharse de un error honesto.

Ante ese cuadro de hechos, el D.A.C.O., organismo administrativo encargado de la aplicación e interpretación de su ley orgánica, y de sus reglamentos, entendió procedente --a base de su experiencia y/o "expertise" en la materia-- archivar la querella; esto es, entendió que la rectificación realizada fue una "adecuada y razonable". La Mayoría, por el contrario, impone un requisito utópico. La decisión administrativa del D.A.C.O debe ser respetada por el foro judicial.

Sabido es que la aplicación e interpretación administrativa de una ley, por aquellos organismos particularmente encargados de ponerla en vigor y velar porque sus fines se cumplan, merece gran consideración y respeto por los tribunales ya que son dichas agencias las que cuentan con una vasta experiencia y conocimiento en la materia que atienden a diario. A.R.P.E. v. Ozares Pérez, 116 D.P.R. 816, 821 (1986); Torres González v. Star Kist, 134 D.P.R. 1024, 1035 (1994). Es por ello que nos hemos autoimpuesto la norma de que no intervendremos en los quehaceres de las agencias administrativas más allá de lo que sea realmente necesario. Agosto Serrano v. F.S.E., 132 D.P.R. 866, 879 (1993).

Conforme se establece en la Ley de Procedimiento Administrativo Uniforme --en adelante, L.P.A.U.[3]-- las determinaciones de hechos realizadas por una agencia administrativa serán sostenidas, en revisión, por los tribunales si las mismas están fundamentadas por evidencia sustancial obrante en el expediente administrativo. 3 L.P.R.A. sec. 2181. Hemos definido evidencia sustancial como aquella que una mente razonable podría aceptar como adecuada

---

[3] 3 L.P.R.A. sec. 2175.

para sostener una conclusión. Hilton Hoteles v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953).En esa misma línea de pensamiento, hemos decidido que para que un tribunal pueda determinar que no existe evidencia sustancial que sostenga las determinaciones realizadas por la agencia administrativa es necesario que la parte afectada demuestre que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el paso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada...y hasta el punto que se demuestre claramente que la decisión [administrativa] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Hilton

Hoteles v. Junta de Salario Mínimo, ante, a la pág. 686; Metropolitana S.E. v. A.R.P.E., res. el 10 de abril de 1995, 138 D.P.R.___ (1995). Esa, ciertamente, no es la situación que presenta el caso de autos.

III

Por último, debemos determinar si Caguas Expressway cumplió, o no, con el segundo de los requisitos que exige el citado Artículo 21 del Reglamento; esto es, si el comerciante en el presente caso colocó el anuncio rectificador en el lugar donde éste expone sus artículos para la venta.

En este aspecto, nos enfrentamos a una situación un tanto peculiar. Tenemos, de una parte, la alegación de la parte querellante a los efectos de que el comerciante no cumplió con dicho requisito. La parte querellada peticionaria, Caguas Expressway, por otro lado, nos llama la atención hacia, y se ampara en, la determinación específica del D.A.C.O., a los efectos de que el comerciante cumplió con la citada disposición reglamentaria, y la presunción de corrección que ampara a todas las decisiones administrativas.

Este Tribunal, repetimos, reiteradamente ha sostenido que la interpretación administrativa de una ley, por parte del funcionario encargado de ponerla en vigor merece gran peso y deferencia. Ríos Colón v. Corporación del F.S.E., res. el 11 de octubre de 1995, 139 D.P.R.___(1995); Asociación Médica v. Cruz Azul, 118 D.P.R. 669 (1987); A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153 (1985); M & V Orthodontics v. Negociado Seguridad Empleo, 115 D.P.R. 183 (1984); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87 (1974); Ready Mix Concrete v. Comisión Industrial, 92 D.P.R. 37 (1965).

En Facultad de Ciencias Sociales v. Consejo de Educación Superior, 133 D.P.R. 521 (1993), expresamos que cuando se impugnan determinaciones de agencias administrativas, "los tribunales deben limitarse a indagar sobre la razonabilidad de las mismas y no deben

sustituirlas por su propio criterio, M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188-189 (1984), "a menos que se infrinja[n] directamente valores constitucionales fundamentales, [o] cuando las actuaciones de estos organismos sean claramente arbitrarias".

Por otro lado, no hay duda del hecho de que a los procedimientos administrativos les cobija una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. M. & B. S. v. Depto. de Agricultura, 118 D.P.R. 319 (1987); Bernabe v. Tribunal, 103 D.P.R. 692, 699 (1975); Monllor & Boscio v. Comisión Industrial, 89 D.P.R. 397, 405 (1963).

En el presente caso, únicamente contamos con la escueta determinación del D.A.C.O. a los efectos de que Caguas Expressway Motors efectivamente cumplió con los dos requisitos que exige el antes citado Artículo 21 del Reglamento de Prácticas y Anuncios Engañosos, promulgado el 3 de octubre de 1990. Dicha determinación, repetimos, goza de una presunción de corrección. La parte querellante, sin embargo, insiste en que el comerciante no cumplió con este segundo requisito.

Ante esta situación, devolveríamos el caso al foro administrativo para que el D.A.C.O. fundamente la determinación que hiciera respecto al segundo de los requisitos exigidos por el Artículo 21 del Reglamento de Prácticas y Anuncios Engañosos.

FRANCISCO REBOLLO LOPEZ
Juez Asociado