Rivera Román, Juez Ponente
*661 TEXTO COMPLETO DE LA RESOLUCIÓN
El Ledo. Edwin Rivera Delgado presentó ún escrito de revisión administrativa en el cual nos solicita que revoquemos la Resolución del 30 de abril de 2004, emitida por la Junta de Apelaciones sobre Construcciones y Lotificaciones, en la cual se dejó sin efecto la determinación de la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) de denegar la solicitud de Permiso de Uso para operar un Centro de Cuidado Diurno.
Por entender que no se cometieron los errores señalados, denegamos la expedición del recurso.
I
El presente caso se originó con la presentación ante A.R.P.E. de una solicitud para operar un Centro de Cuidado Diurno infantil (en adelante el Centro). El Centro se ubicaría en los bajos de la residencia de la solicitante, la Sra. Carmen Vélez Rodríguez, la cual está ubicada en el Barrio Jagual de Gurabo, y ofrecería servicios de seis de la mañana a seis de la tarde a una matrícula de 24 niños. La residencia de la Sra. Vélez de encuentra localizada en un área zonificada como Distrito Residencial Uno (R-l).
La propiedad de la Sra. Vélez Rodríguez es la última de diez solares que se encuentran en una calle sin salida. Nueve de dichos solares tienen una estructura construida y tres de ellos son utilizados para fines comerciales. En uno de esos tres últimos solares opera una compañía de pinturas, en otro un taller de mecánica, y en el tercero otro centro de cuidado diurno, localizado en la propiedad colindante a la residencia de la recurrida.
La Sra. Vélez Rodríguez solicitó que su caso se evaluara conforme al mecanismo de excepciones a la reglamentación vigente y notificó a los vecinos del sector utilizando el Formulario 15.163. Además, presentó evidencia de contar con el endoso del Servicio Estatal de Bomberos.
El 15 de febrero de 2002 se celebró la vista administrativa ante el Oficial Examinador de A.R.P.E. Dos vecinos se opusieron a la concesión del permiso. La Sra. Ana I. Tañón se opuso al uso propuesto, ya que era dueña del otro centro de cuido de niños que operaba en la misma calle. El Ledo. Rivera Delgado (en adelante el recurrente), se opuso, por entender que el Centro resultaría en un serio problema de tráfico en la calle sin salida en donde estaría ubicado el mismo.
El Oficial Examinador que presidió la vista administrativa recomendó la no concesión del permiso, por entender que "toda vez que la propiedad ubica al final de una calle sin salida y en especial que al frente de ésta existe un centro de cuido en operación", se afectaría la calidad de vida de los vecinos, debido al aumento en el flujo de vehículos.
Inconforme con tal determinación, la Sra. Vélez Rodríguez presentó un escrito de apelación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (en adelante la Junta de Apelaciones). Alegó que la estructura física y el diseño de la propiedad donde ubicaría el Centro permite que los vehículos puedan ser estacionados dentro del predio, pudiendo, además, virar dentro del mismo, evitando así la creación de un problema con el flujo vehicular. Señaló, además, la Sra. Vélez Rodríguez que los vecinos del área están acostumbrados a vivir en una zona altamente comercial. Luego de celebrar una vista administrativa y examinar la prueba presentada por las partes, la Junta de Apelaciones revocó la determinación de A.R.P.E. y expresó que el uso solicitado era uno permitido al amparo de los reglamentos aplicables y que las características de la propiedad en cuestión eran ideales para el uso propuesto.
Por estar en desacuerdo con la determinación de la Junta de Apelaciones, el Ledo. Rivera Delgado presentó el escrito de revisión ante nuestra consideración. El recurrente indica que la Junta de Apelaciones cometió los siguientes errores:

*662
“1. Erró la J.A.C.L. al autorizar el permiso de uso sin considerar el efecto adverso de dicha concesión al carácter del vecindario, ignorando que el interés publico y el interés comunitario están por encima del interés del dueño del inmueble que ha solicitado el permiso.

2. Erró la J.A.C.L. al interpretar erróneamente que el uso solicitado es uno permitido ministerialmente, a pesar de haberse utilizado el mecanismo de excepción cuya aprobación es de naturaleza discrecional conforme a la reglamentación vigente.

3. Erró la J.A.C.L. al actuar de manera arbitraria, ilegal e irrazonable, al evaluar la determinación de la Administración de Reglamentos y Permisos en la medida en,que su evaluación hizo abstracción de los hechos adjudicados y probados constituyendo un claro abuso de discreción. ”
n
A. Principios Generales de Derecho Administrativo
La Ley de Procedimiento Administrativo Uniforme (en adelante L.P.A.U.), 3 L.P.R.A. see. 2101 et seq., delegó a diversas agencias administrativas poderes cuasijudiciales con el objetivo de hallar la verdad y de hacer justicia. López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109 (1996).
Sabido es que la revisión judicial de las decisiones administrativas comprende tres aspectos: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho en todos sus aspectos. Véanse, L.P.A.U., see. 4.5, 3 L.P.R.A. sec. 2175 (1992); Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85, 93 (1997). Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Colombia, Editorial Forum, 1993, pág. 521.
Al ejercer su función revisora, el tribunal debe examinar si la actuación del organismo administrativo se ajusta al poder que le ha sido delegado, pues de lo contrario su actuación sería ultra vires y, como consecuencia, nula. Perfect Cleaning Services, Inc. v. Corporación del Centro Cardiovascular de P.R. y del Caribe, 2004 J.T. S. 143; Fuertes y otros v. A.R.P.E, 134 D.P.R. 947 (1993); Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218, 223-24 (1974).
Reconociendo la importancia de las agencias administrativas en nuestro sistema de gobierno, y debido a que éstas cuentan con la experiencia y los conocimientos especializados en los asuntos que le han sido encomendados, nuestro Tribunal Supremo ha resuelto que sus decisiones deben generalmente ser acreedoras de gran consideración y respeto. Misión Ind. P.R. v. J.C.A. 145 D.P.R. 908, 929 (1998); Fuertes y otros v. A.R.P.E, supra, pág. 953; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
En relación con las determinaciones de hechos de una agencia, la L.P.A.U. dispone que éstas deben ser sostenidas por el tribunal revisor, siempre que estén basadas en "evidencia sustancial" contenida en el expediente administrativo. 3 L.P.R.A. see. 2175. Esta disposición recoge estatutariamente la norma jurisprudencial que establece que, de ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas se apoyan en prueba suficiente que surja del récord administrativo considerado en su totalidad. Metropolitana, S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 532 (1993); Rodrigo v. Tribunal Superior, 101 D.P.R. 151, 154 (1973). El propósito de la regla de evidencia sustancial aplicable a las determinaciones de hechos es "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor". Reyes Salcedo v. Policía de Puerto Rico, supra, pág. 95. Se considerará evidencia sustancial aquella evidencia que una mente razonable pueda aceptar como adecuada para sostener una conclusión. Ramírez v. Depto. de Salud, 147 D.P.R. 901 (1999).
*663 La revisión judicial de las decisiones administrativas está delimitada, además, por lo incluido en el récord o expediente administrativo. Así lo establece la LPAU disponiendo que "el expediente de la agencia constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior". 3 L.P.R.A. see. 2168. En ese sentido, los Tribunales están impedidos de intervenir con las determinaciones de hechos de una agencia administrativa de éstas hallarse fundamentadas en prueba que surge del expediente. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. _ , 2000 J.T.S. 98; Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, (1999).
Nuestro más alto foro ha expresado que la parte afectada que intenta convencer al Tribunal de que la evidencia en que una agencia administrativa basó sus determinaciones de hechos no debe ser considerada como evidencia sustancial, viene obligada a demostrar que existe otra prueba en el récord que menoscaba o reduce el valor probatorio de la evidencia impugnada, hasta el punto que sea forzoso concluir que la determinación de la agencia fue irrazonable. Asoc. Vec. H. San Jorge v. U. Med. Corp, supra; Misión Ind. de P.R. v. J.P., 146 D.P.R. 64 (1998); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995). A tenor con esa concepción, las determinaciones de hechos de una agencia serán respetadas si descansan en una base racional, aun si el tribunal hubiese preferido que se llegase a otra conclusión. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Editorial Forum, 2001, pág. 543.
A diferencia de las determinaciones de hechos, las conclusiones de derecho de una agencia pueden ser revisadas en todos sus aspectos por el tribunal. 3 L.P.R.A. § 2175 (1992). Esto no significa que los tribunales puedan descartar libremente las conclusiones de derecho de una agencia administrativa. P.R.T.C. v. J. Reg. Tel. de P.R., supra. Por el contrario, los tribunales deben brindar deferencia a las interpretaciones que las agencias administrativas efectúan con relación a la ley cuya administración les fue encomendada por la legislatura, ya que en esos casos se presume que la agencia posee un conocimiento especializado en aquellos asuntos que le fueron encomendados. Reyes Salcedo v. Policía de P.R., supra, págs. 109-110. Ha expresado nuestro Tribunal Supremo que dicha deferencia descansa en que los organismos administrativos "cuentan con una basta experiencia y conocimiento (expertise) en relación con la materia con la que bregan día tras día". Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 436 (1997); M & V Orthodontics v. Negdo. Seg. Empleo, 115 DP.R. 183, 189 (1984).
Se ha señalado, además, que en casos marginales o dudosos, la interpretación de un estatuto por una agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando esa interpretación no sea la única razonable. P.R.T.C. v. J. Reg. Tel. de P.R., supra; De Jesús v. Dpto. de Servicios Sociales, 123 D.P.R. 407, 418 (1989). Esta deferencia judicial al expertise administrativo, sin embargo, cede ante una actuación irrazonable o ilegal. Asoc. Vec. H. San Jorge v. U. Med. Corp, 150 D.P.R. 70, 76 (2000). Como ha señalado el Profesor Demetrio Fernández:
‘‘Ahora bien, la deferencia que se preste debe estar predicada realmente en un peritaje superior demostrado por la agencia. Si las decisiones de las agencias no cumplen con esas expectativas, entonces es necesaria una mayor participación de los tribunales. Tal incumplimiento justifica la intervención judicial porque pone de manifiesto que hay falta de entendimiento del objetivo y de la política pública a ser alcanzada y desarrollada por el organismo administrativo.” Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, supra, pág. 505.
La función revisora de los tribunales en cuanto a las conclusiones de derecho de las agencias se limita, entonces, a determinar si la interpretación o actuación administrativa fue razonable, a la luz de las pautas trazadas por el legislador. El criterio de revisión que el tribunal debe aplicar es el de razonabilidad, sosteniendo las interpretaciones administrativas, siempre que la agencia no haya actuado arbitraria o ilegalmente, o haya abusado de su discreción. Rivera Concepción v. A.R.P.E., 152 D.P.R. _ (2000), 2000 J.T.S. 155, pág. 160. No merece deferencia la interpretación que una agencia administrativa hace de una ley si dicha interpretación *664 afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de injusticias. Costa, Piovanetti v. Caguas Expressway, supra; Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226 (1998). Tampoco merecen deferencia las interpretaciones que producen resultados incompatibles o contrarios al propósito del estatuto interpretado. Costa, Piovanetti v. Caguas Expressway, supra, pág. 889; Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020 (1992). Las conclusiones de derecho efectuadas por las agencias administrativas que no involucran interpretaciones efectuadas dentro de su zona de especialización, deben ser objeto de una revisión completa y absoluta. Ver Reyes Salcedo v. Policía de P.R., supra, pág. 110.
B. Derecho aplicable a A.R.P.E. y a la Junta de Apelaciones sobre Construcciones y Lotificaciones.
En Puerto Rico, la Administración de Reglamentos y Permisos es la agencia administrativa investida con la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. Asoc. C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 331 (1985). A esta agencia se le ha concedido amplia discreción sobre la formulación y mantenimiento de la política pública a seguir en relación a la concesión y denegación de permisos de uso. A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 821 (1986).
Entre los Reglamentos que A.R.P.E. viene ministerialmente obligada a hacer cumplir se encuentra el Reglamento de Zonificación de Puerto Rico, (Reglamento de Planificación Núm. 4 de 5 de noviembre de 2000). El Reglamento de Zonificación, supra, establece distintos tipos de distritos de zonificación, los cuales limita a determinados usos. En relación al Distrito Residencial Uno (R-l), el Reglamento de Zonificación, supra, dispone lo siguiente:

“Sección 11.02 Usos en Distritos R-l

1. Casas de familia en solares con cabida de 900 metros cuadrados mínimo.

2. Vivienda adicional en segunda planta.

3. Casas en hilera y casas patio de acuerdo con lo establecido en las Secciones 64.00 y 65.00 de este Reglamento

4. Centros de cuidado para niños y envejecientes.

5. Desarrollos extensos de conformidad con las disposiciones de las Secciones 79.00, 80.00 y 81.00 de este Reglamento.

6. Estacionamiento en solares o estructuras construidas para esos propósitos, siempre que se cumpla con lo establecido para el diseño de áreas de estacionamiento en la Subsección 74.02 de este Reglamento.

7..Hospedajes especializados.

8. Otros usos de acuerdo con lo establecido en la Sección 84.00 de este Reglamento. ” (Énfasis nuestro).
De otro lado, con el propósito de instrumentar la política pública que le fue encomendada en cuanto a la concesión de permisos, se le ha reconocido a A.R.P.E. la facultad de conceder permisos discrecionales utilizando uno de dos métodos: (1) por vía de excepción, al amparo de lo dispuesto por la Sección 84.00 del Reglamento de Zonificación, supra, ó (2) autorizando una variación, a la luz de la sección 82.00 del antes mencionado cuerpo reglamentario. Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. _ , 2002 J.T.S. 104, pág. 1468. En este contexto, el término "variación" ha sido definido como el permiso para dedicar la propiedad a un uso prohibido por las restricciones impuestas en una zona o distrito, y el término "excepción" como la *665 autorización para usar la propiedad en cierto modo que de antemano el Reglamento de Zonificación admite y tolera, siempre que se cumplan con ciertas condiciones. Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 92 (1974).
En relación a la concesión de servicios por la vía de excepción, en Asoc., C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 336 (1985), el Tribunal Supremo expresó que al determinar si éstos deben concederse, lo importante es restringir y controlar "ciertos usos que pueden resultar adversos al carácter del vecindario, aunque no necesariamente compatibles...Por eso, tiene primacía en la concesión el interés publico y el interés del vecindario en particular sobre el interés del dueño del terreno". (Énfasis en el original). Añadió nuestro más alto foro que al hacer esa determinación, deben tomarse en consideración factores como los siguientes: (1) la necesidad que tenga el vecindario de la "actividad" que se pretende establecer; (2) la conveniencia de la "actividad" para el vecindario o sector en particular, desde el punto de vista que la misma no resulte adversa a la salud, moral, seguridad y bienestar público del vecindario; (3) la característica particular del vecindario en controversia, desde el punto de vista de la "cualidad de vida y estética" del mismo; (4) la no deseabilidad de la concentración de facilidades similares en uñ mismo sector; (5) el tráfico vehicular y raido que generará la actividad solicitada; (6) si el carácter específico del vecindario en particular amerita un tratamiento distinto en general.
El Reglamento de Zonificación, supra, en su Sección 84.03, establece los siguientes criterios a seguir en relación a la concesión de permisos de uso por la vía de excepción:
“84.03 Criterios - La determinación que se tome sobre un uso propuesto bajo las disposiciones de esta Sección descansará en la evaluación de la combinación de factores que presente y demuestre la parte interesada en cada caso. Para que haya una determinación favorable, la parte interesada debe demostrar que tiene la capacidad de operar el uso juiciosamente y que la operación del uso resulta conveniente al interés publico, a base, pero sin limitarse a éstos, de los siguientes criterios:

1. Se proteja la salud, seguridad y el bienestar de los ocupantes de la propiedad objeto de la solicitud así como de propiedades limítrofes.

2. No se menoscabe el suministro de luz y aire a la edificación a usarse u ocuparse o a las propiedades limítrofes.

3. No se aumente el peligro de fuego.

4. No se ocasione reducción o perjuicio a los valores de las propiedades establecidas en áreas vecinas.

5. Se demuestre la viabilidad, adecuacidad y conveniencia del uso solicitado.

6. Se cumpla con las condiciones establecidas en este Reglamento o que puedan establecerse para el caso particular. ”

En cuanto a los centros de cuidado diurno de niños, el Reglamento de Zonificación, supra, en su Sec. 84.05, establece lo siguiente como excepción a los usos permitidos en una serie de distritos:
“2. Centro de cuidado diurno de niños, en cualquier distrito residencial excepto R-3 y en Distritos CR-H sin límite de tamaño de solar, excepto en Distritos R-O, RT-O, RT-OO, My P cuyo solar no podrá exceder una (1) cuerda...”.
Por otro lado, la Junta de Apelaciones sobre Construcciones y Lotificaciones es el organismo con la facultad de atender aquellos exclusivamente en casos en los cuales una parte directamente afectada por *666 determinaciones de A.R.P.E. que estén relacionadas, entre otras cosas, a los permisos de uso de edificios y solares. 23 L.P.R.A. sec. 72(c).
Al ejercer su poder de celebrar vistas administrativas, la Junta de Apelaciones tiene la facultad de recibir toda la prueba que resulte necesaria para adjudicar un caso, no estando limitada a recibir únicamente aquella prueba que tuvo ante sí el funcionario con jurisdicción original en el asunto. 23 L.P.R.A. sees. 72 (b), 72(c); Junta de Planificación v. J.A.C.L. 109 D.P.R. 210 (1979).
III
En el presente caso, la Sra. Vélez Rodríguez presentó su solicitud de permiso de uso bajo las disposiciones del mecanismo de excepción. A.R.P.E. determinó que la operación del Centro de Cuidado Diurno infantil cuyo permiso de uso se solicitaba afectaría la calidad de vida de los vecinos de la Sra. Vélez Rodríguez en el Barrio Jagual del Municipio de Gurabo, pues aumentaría el flujo de tránsito en una calle sin salida.
La Junta de Apelaciones no estuvo de acuerdo con dicha conclusión, y, ejerciendo las facultades que la ley le otorga, revocó la determinación de A.R.P.E.
En su primer señalamiento de error, el recurrente indica que la Junta de Apelaciones no tomó debidamente en cuenta el interés público y el interés comunitario. Señala el recurrente que el conceder el permiso de uso solicitado trastoca la seguridad, la salud, el valor de las propiedades y el bienestar de la comunidad, provocando con ello la erosión del sentido de vida comunitario al que tienen derecho los vecinos del sector.
En su resolución, la Junta de Apelaciones indica que la estructura física, diseño y cabida de la propiedad de la Sra. Vélez permite que los vehículos de los clientes del Centro puedan ser estacionados dentro del predio, sin obstaculizar la vía pública del sector y facilitando el flujo eficiente y planificado del tránsito del sector en cuestión. De la resolución se desprende que una tercera parte de las estructuras ubicadas en los solares de la calle donde está localizada la residencia de la Sra. Vélez Rodríguez se dedican actualmente a usos comerciales. Existe, inclusive, otro centro de cuido de niños en esa calle, además de una compañía de pintura y un taller de mecánica. Señaló, además, la Junta de Apelaciones que el uso solicitado, además de ser viable, es uno necesario, pues la realidad de las familias puertorriqueñas hace indispensable la existencia de centros de cuido infantiles.
No tiene razón el recurrente cuando alega que la Junta de Apelaciones no tomó en cuenta el interés público y el interés comunitario del vecindario. Esta tomó en cuenta la viabilidad del Centro de Cuidado propuesto con respecto al problema de tráfico que el establecimiento de ésta podría o no generar, así como respecto a las características particulares del vecindario en cuestión. Además, la Junta de Apelaciones se expresó sobre la deseabilidad del establecimiento de un Centro de Cuidado de niños en el vecindario, así como la necesidad del establecimiento del mismo. En fin, la Junta de Apelaciones tomó en consideración el interés público y el interés del vecindario al emitir su resolución revocatoria. Entendemos que su determinación fue una razonable.
Según ha señalado el Tribunal Supremo de Puerto Rico, las decisiones de la Junta de Apelaciones sobre Construcciones y Lotificaciones, al igual que las decisiones de todos los organismos administrativos, merecen la mayor deferencia judicial. Rivera Concepción v. A.R.P.E., supra, pág. 160. Como señalamos anteriormente, esto es así porque éstas cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le encomiendan. Por lo tanto, cuando sus decisiones son impugnadas en los tribunales, éstos deben limitarse a indagar sobre la razonabilidad de las mismas y no deben sustituirlas por su propio criterio. Rivera Concepción v. A.R.P.E., supra, pág. 160.
En su segundo señalamiento de error, el recurrente indica que la Junta de Apelaciones determinó de forma incorrecta que el uso solicitado es uno "permitido ministerialmente", a pesar de que la Sra. Vélez Rodríguez *667 presentó su solicitud bajo el mecanismo de excepción. Resulta inmeritorio el planteamiento del recurrente.
En su resolución, la Junta de Apelaciones señaló que aunque la solicitud ante A.R.P.E. se presentó bajo el mecanismo de excepción, el uso solicitado por la Sra. Vélez Rodríguez es uno de los permitidos por el Reglamento de Zonificación, supra, indicó la Junta de Apelaciones:

“El uso solicitado es uno permitido al amparo de las disposiciones del Reglamento vigente. La solicitud fue hecha bajo las disposiciones del mecanismo de Excepción, toda vez que el Reglamento incluye el uso solicitado en la sección de excepciones para el Distrito R-l. If o obstante ello, dicho uso es permitido ministerialmente. ”

El mecanismo de excepción requiere que se tomen en consideración los criterios establecidos en la Sección 84.03 del Reglamento de Zonificación, supra. Sin embargo, tal y como señala la Junta de Apelaciones, el uso solicitado por la Sra. Vélez Rodríguez es uno de los expresamente permitidos por el Reglamento de Zonificación, supra, por lo cual no era necesario recurrir al mecanismo de excepción antes mencionado.
No obstante, como sugiere nuestra discusión del primer error señalado, tanto bajo el mecanismo ordinario de concesión de permisos como bajo el mecanismo de excepción, la determinación de la Junta de Apelaciones resulta ser una razonable. Dicho organismo administrativo determinó, a base de su expertise, que el uso solicitado era no sólo viable, sino necesario, que no crearía el problema de tráfico que alega el recurrente, y que la Sra. Vélez Rodríguez había satisfecho todas las disposiciones reglamentarias aplicables.
En su tercer señalamiento de error, el recurrente señala que la determinación de la Junta de Apelaciones fue una arbitraria, ilegal e irrazonable, en la medida en que no tomó debidamente en cuenta los hechos adjudicados y probados por A.R.P.E.
El recurrente expresa que la Junta de Apelaciones realizó una nueva vista con el propósito de sustituir su criterio por el de A.R.P.E., lo que aduce constituye un abuso de discreción. No le asiste la razón, pues la Junta de Apelaciones está investida con la facultad de celebrar vistas administrativas y recibir toda la prueba que resulte necesaria para adjudicar el caso. 23 L.P.R.A. sec. 72(c); Junta de Planificación v. J.A.C.L. supra.
Por consiguiente, luego de examinar la prueba presentada por las partes, la Junta de Apelaciones puede realizar sus propias determinaciones de hechos, y, como consecuencia, llegar a conclusiones distintas a las de A.R.P.E. Precisamente eso fue lo que sucedió en este caso, pues a diferencia de A.R.P.E., la Junta de Apelaciones concluyó, a base de su conocimiento especializado, que la concesión del permiso solicitado no resultaría en el problema de flujo vehicular en el cual A.R.P.E. basó su decisión de denegar el permiso solicitado.
IV
Por los fundamentos antes expuestos, se deniega la expedición del recurso.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General