*773 Voto particular disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez, al que se une la Jueza Presidenta Señora Fiol Matta.
Disiento respetuosamente del curso seguido por una mayoría de este Tribunal por entender que la sentencia que hoy se emite, lejos de adelantar los intereses de los consumidores puertorriqueños, desvirtúa el propósito de los reglamentos pertinentes aprobados por el Departamento de Asuntos del Consumidor (Daco). En vez, confirmaría la sentencia del Tribunal de Apelaciones que validó las multas impuestas a Toys “R” Us de Puerto Rico (TRU) por incumplir con el Reglamento contra prácticas y anuncios engañosos Núm. 7751 de 24 de septiembre de 2009.
Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.
I
El 24 de octubre de 2009 entró en vigor el Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra, promulgado por el Daco en virtud de los poderes conferidos en su Ley Orgánica. Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 LPRAsec. 341. Este Reglamento tiene el “propósito de proteger a los consumidores de las prácticas y anuncios que creen o tiendan a crear una apariencia falsa o engañosa sobre bienes o servicios ofrecidos en el comercio”. Reglamento Núm. 7751, supra, Regla 2, pág. 1.
En anticipación a la fecha de efectividad de este reglamento, el peticionario, TRU, y otros comerciantes solicitaron una reunión con el Secretario del Daco para discutir varias dudas antes de la temporada navideña de 2009. Apéndice, pág. 21. La reunión se celebró el 21 de octubre de 2009. Entre otros asuntos, en la reunión TRU expresó *774 inquietud ante las nuevas disposiciones aplicables a ventas especiales plasmadas en las Reglas 13, 14 y 15 del Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra, pues TRU posee cuatro tiendas en Puerto Rico —cada una con un inventario único— pero sólo publica un anuncio de venta especial que aplica a las cuatro tiendas. Debido a que el número de artículos disponibles que anuncia varía de tienda en tienda, TRU solicitó al Secretario una recomendación sobre cómo divulgar el inventario disponible para cumplir con las exigencias del Reglamento. Según el testimonio presentado por las partes y las determinaciones de hechos emitidas por el Juez Administrativo en la vista administrativa ante el Daco, la recomendación del Secretario fue “que estableciera ‘la cantidad más baja de la tienda que tuviera’ ”. Id.
Luego de celebrada la reunión, el 3 de noviembre de 2009, el Daco emitió la Interpretación del Secretario 2009-02, donde profundizó sobre las disposiciones del Reglamento contra prácticas y anuncios engañosos. En particular, el Secretario interpretó las Reglas 5, 13, 14, 15, 11(1), 22(J), 23 y 28 del Reglamento en cuestión. Respecto a la Regla 13, en síntesis, estableció que “los anuncios de los artículos anunciados en especial indicarán el número de artículos disponibles por tienda o en el almacén y que la venta especial finalizará cuando se vendan los artículos disponibles”. Interpretación del Secretario 2009-02, supra, pág. 5.
Así las cosas, y a raíz de una investigación realizada el 18 de noviembre de 2009 por un funcionario del Daco, el Departamento encontró que 48 anuncios publicados por TRU en una hoja de venta especial violaron la Regla 13(A) 1 del Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra.(1) En su “shopper”, TRU había identificado la cantidad disponible de artículos en venta especial utilizando la frase “mínimo uno (1) por tienda”. El *775 Daco determinó que esta frase no cumplía con el requisito de la Regla 13(A) 1 de indicar clara y adecuadamente la cantidad total disponible de los artículos en venta especial. Posteriormente, el Daco encontró 24 y 21 infracciones adicionales en anuncios de venta especial publicados durante los meses de noviembre y diciembre de 2009, para un total de 93 infracciones a la Regla 13(A) 1 del Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra.(2) El 10 de diciembre de 2009, notificó una multa de $400 por cada una de las 93 infracciones.
TRU solicitó la revisión de las multas notificadas y el 5 de mayo de 2010 se celebró una vista administrativa. En la vista testificó la empleada de TRU responsable de coordinar con los diseñadores de los “shoppers”. Según su testimonio, la señora indicó que originalmente los anuncios por pautar contenían la cantidad disponible de artículos por tienda y ninguno incluía la palabra “mínimo”. No obstante, luego de la reunión con el Secretario, la representación legal de TRU le indicó que debían utilizar la palabra “mínimo”.
Por su parte, TRU solicitó la desestimación de las multas impuestas, alegando que no incumplió con la Regla 13(A)1 del Reglamento contra prácticas y anuncios engañosos, supra. Además, adujo que el Daco estaba impedido de ir en contra de sus propios actos, pues en la reunión celebrada entre las partes el Secretario expresó a los representantes de TRU que indicaran la cantidad disponible según la tienda que menos inventario tuviera. A su vez, alegó que, al notificar las infracciones y multas, el Daco no cumplió con el Reglamento para la imposición de multas, pues no emitió aviso de infracción alguno antes de notificar las multas. Reglamento Núm. 7750 de 24 de septiembre de 2009.
*776 Mediante una resolución dictada el 5 de enero de 2011, el Daco ordenó a TRU a pagar la cantidad total de $37,600, esto es, una multa de $400 por cada una de las 93 infracciones. Posteriormente, TRU solicitó la revisión judicial de la determinación del Daco ante el Tribunal de Apelaciones, quien confirmó la resolución mediante una sentencia archivada en autos el 16 de agosto de 2011.
Inconformes con la determinación del Tribunal de Apelaciones, TRU acudió ante este Tribunal y planteó los errores siguientes. Primero, erró el Tribunal de Apelaciones al confirmar la resolución del Daco que resolvió que TRU infringió la Regla 13(A) 1 del Reglamento contra prácticas y anuncios engañosos, supra. Segundo, erró el foro apelativo intermedio al no desestimar las multas impuestas porque el Daco no emitió los avisos de infracción que exige la Regla 8 del Reglamento para la imposición de multas, supra. Tercero, el Daco abusó de su discreción al imponer varias multas por una sola violación al Reglamento contra prácticas y anuncios engañosos, supra. Finalmente, el Daco está impedido de ir en contra de sus propios actos, debido a la alegada incompatibilidad entre las expresiones del Secretario en la reunión con TRU del 21 de octubre de 2009 y la Interpretación del Secretario Núm. 2009-02, supra.
Planteada así la controversia, el 16 de diciembre de 2011 expedimos el auto solicitado. Con el beneficio de la comparecencia de las partes, procedemos a resolver.
II
La revisión judicial de las decisiones administrativas busca delimitar la discreción de las agencias para cerciorarse que éstas ejerzan sus funciones conforme a la ley y de forma razonable. Mun. de San Juan v. J.C.A., 149 DPR 263, 279 (1999). Considerando la vasta experiencia y el conocimiento especializado que poseen las agencias guber *777 namentales sobre los asuntos que se le han delegado mediante legislación, como norma general, las decisiones que toman los organismos administrativos gozan de gran deferencia y respeto de parte de nuestros tribunales. Mun. San Juan v. Plaza Las Américas, 169 DPR 310 (2006); Hernández, Álvarez v. Centro Unido, 168 DPR 592 (2006).
No obstante, esta deferencia no puede servir de pretexto para imprimir un sello de corrección a decisiones o interpretaciones administrativas irrazonables o contrarias a derecho. Por lo tanto, la deferencia reconocida cede en instancias apropiadas y meritorias, a saber: (1) cuando la determinación administrativa no está basada en evidencia sustancial; (2) cuando la agencia erró al aplicar o interpretar las leyes o reglamentos que administra; (3) cuando la agencia realiza determinaciones carentes de base racional, por lo que actúa de forma arbitraria, irrazonable o ilegal, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Empresas Ferrer v. ARPe, 172 DPR 254, 264 (2007).
Las determinaciones de hecho de los organismos administrativos gozan de una presunción de regularidad y corrección que los tribunales deben respetar y le corresponde a la parte que las impugne producir evidencia suficiente como para derrotar esta presunción. Otero v. Toyota, 163 DPR 716 (2005). Según establece la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), los tribunales sostendrán las determinaciones de hechos que realicen las agencias administrativas si, al considerar el expediente administrativo en su totalidad, sus determinaciones están basadas en evidencia sustancial. Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, See. 4.5, 3 LPRA see. 2175; Empresas Ferrer, supra, pág. 265. A su vez, evidencia sustancial es “aquella evidencia relevante que una mente razonable po *778 dría aceptar como adecuada para sostener una conclusión”. Hernández, Álvarez v. Centro Unido, supra, pág. 615.
Por otro lado, la facultad de los tribunales para revisar conclusiones de derecho es mayor, aunque no absoluta:
En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que éstas pueden revisarse “en todos sus aspectos por el tribunal”. 3 L.P.R.A. sec. 2175. No obstante, los tribunales deben conceder gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y los reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. [...] Así, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. [...] Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa. Empresas Ferrer, supra, pág. 266.
Por lo tanto, el estándar que utilizará un tribunal para revisar las decisiones de la agencia depende del aspecto de la decisión que se revisa: si es una determinación de hechos o una conclusión de derecho.
A
El Daco fue creado con el propósito principal de vindicar e implementar los derechos del consumidor. 3 LPRA see. 341b. Para cumplir con esta encomienda, y en virtud de la facultad del Secretario del Daco para “[Reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio”, 3 LPRA sec. 341e(j), el 24 de septiembre de 2009 se aprobó el Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra. El mismo entró en vigor el 24 de octubre de 2009.(3)
*779 Cónsono con la misión del Daco, el Reglamento contra prácticas y anuncios engañosos debe interpretarse liberalmente a favor del consumidor. Reglamento Núm. 7751, supra, Regla 4. Este Reglamento aspira a que el consumidor cuente con toda la información necesaria y adecuada para poder tomar una decisión informada sobre el bien o servicio anunciado. Consecuentemente, define un anuncio engañoso como
[...] cualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda a comunicar una idea falsa o incorrecta sobre el bien o servicio anunciado. Cualquier anuncio que omite datos relevantes del producto, bien o servicio, limitando al consumidor de tomar decisiones informadas e inteligentes. (Énfasis suprimido). íd., Regla 5(C), pág. 15.
Más aún, la Regla 8 del Reglamento contra prácticas y anuncios engañosos dispone lo siguiente sobre la forma que deben tener los anuncios:
Todo anuncio deberá estar redactado, expresado y presentado en tal forma que lleve a la mente del consumidor toda aquella información que le sea esencial y necesaria para conocer sobre las cualidades, calidad, formas de pago, precio, tamaño, cantidad, utilización o cualquier otra característica del bien o servicio que se anuncia, libre de toda ambigüedad que puede tender a confundirlo. íd., Regla 8(A), pág. 15.
En las Reglas 13, 14 y 15 del Reglamento contra prácticas y anuncios engañosos el Daco estableció un esquema para regular los anuncios de ventas especiales, conocidos como “shoppers”. Según establece el Reglamento, todo comerciante que desee anunciar una venta especial debe tener, bien sea en la misma tienda o el almacén, “cantidades suficientes [del bien] para responder a la demanda razonablemente anticipada durante todo el periodo de efectividad de la venta especial anunciada”. íd., Regla 13(A), pág. 28. Si el bien anunciado se agota antes que culmine la venta, la Regla 14 le provee dos alternativas al comerciante, entre las cuales el consumidor puede elegir. Primero, el comer *780 ciante estará obligado a ofrecer al consumidor un artículo sustituto por el precio del bien anunciado. Segundo, si el consumidor prefiere comprar el bien anunciado en venta especial, el comerciante deberá ofrecerle un vale o “rain check” para que vuelva a la tienda dentro de un periodo de 30 días y compre el bien según los términos anunciados. Si luego de ofrecer el vale el comerciante no ha cumplido con lo prometido, entonces el comerciante estará obligado a pa-gar en efectivo el valor representativo del descuento.
Ahora bien, si tras no tener disponible el bien anunciado en venta especial el comerciante desea eximirse de las responsabilidades que impone la Regla 14 —ofrecer artículos sustitutos, ofrecer un vale para el bien anunciado en especial o compensar el valor representativo del descuento, según proceda—, deberá cumplir con ciertos requisitos establecidos en la Regla 13(A):
El comerciante tendrá disponible para la venta, en la tienda o en el almacén, los bienes anunciados en especial, en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta especial anunciada, a menos que se cumpla con los siguientes requisitos’.
1. el anuncio del bien en especial indica clara y adecuadamente la cantidad disponible de cada uno de los bienes en especial por tienda;
2. que la venta especial finalizará en una fecha determinada; y
3. hasta que se vendan los artículos disponibles. (Enfasis suplido). íd., págs. 28-29.
Según se desprende del texto de la Regla 8, el anuncio debe indicar clara y adecuadamente la cantidad disponible de cada uno de los bienes disponibles en cada tienda que anuncie. También debe indicar clara y adecuadamente que la venta termina en una fecha determinada y que durará hasta que se vendan los artículos disponibles. Para activar la exención que provee la Regla 13, el anuncio de venta especial siempre tiene que cumplir con sus tres requisitos.
*781 En síntesis, al agotarse un bien anunciado en venta especial, como norma general, el comerciante está obligado a proveer los tres remedios disponibles en la Regla 14. Sin embargo, el comerciante puede librarse de esa responsabilidad cumpliendo con las exigencias de la Regla 13.
Para efectos de la Regla 13, el Reglamento define clara y adecuadamente como una "representación fácilmente perceptible, libre de ambigüedades y de un tamaño, contrastes de color y audición que al ser presentada pueda ser rápidamente captada y entendida sin dificultad”. Id., Regla 5(F), pág. 4. Como reconocimos en Costa, Piovanetti v. Caguas Expressway, 149 DPR 881, 890 (1999), el término adecuada es inherentemente ambiguo. Evaluando si una corrección era adecuada y razonable, expresamos que esa determinación requiere un análisis caso a caso, cónsono con el propósito de la exigencia misma. Id. Consiguientemente, al interpretar el requisito de la Regla 13 de identificar clara y adecuadamente las cantidades disponibles, debemos sopesar el propósito de la Regla y la totalidad del Reglamento contra prácticas y anuncios engañosos, supra.
Para que un anuncio cumpla con el requisito de indicar clara y adecuadamente la cantidad de bienes disponible éste debe, según la totalidad de su contenido, indicar la cantidad disponible de forma tal que el consumidor que se enfrente al anuncio pueda determinar esa cantidad y to-mar una decisión informada sobre la oferta. Además, para que la cantidad anunciada refleje clara y adecuadamente la cantidad verdaderamente disponible de los bienes anunciados, debe guardar una relación racional con los dos requisitos adicionales de la Regla 13 —anunciar la fecha en que termina la venta y que la misma será efectiva hasta que se agoten las cantidades— de forma tal que se justifique eximir al comerciante de conceder un vale, descuento o artículo sustituto, según requerido por la Regla 14.
*782 B
Es norma reiterada que “una vez una agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción, viene obligada a observarlos estrictamente y no queda a su soberana voluntad de reconocer o no los derechos que ella misma [...] ha extendido”. García Cabán v. U.P.R., 120 DPR 167, 174 (1987). Cónsono con su mandato de velar por el cumplimiento de las leyes y reglamentos que administra, el Daco también promulgó el Reglamento para la imposición de multas, supra. El Reglamento define aviso de infracción como “[una] notificación expedida por el Departamento en la que se imputa la comisión de unos hechos que constituyen una violación de alguna ley o reglamento u orden administrada por el Departamento”. Id., Regla 5(A), pág. 2. Por su parte, la Regla 8(B) indica que el aviso de infracción debe contener: (1) una descripción de las circunstancias personales del infractor; (2) la descripción de las circunstancias en que se realiza la inspección: (3) la descripción de la actuación u omisión constitutiva de violación; (4) las disposiciones legales o reglamentarias que dan lugar al aviso de infracción; (5) una advertencia que el Departamento podrá notificar una multa dentro de los próximos 20 días, y (6) las circunstancias del empleado o funcionario que emite el mismo. Id., Regla 8, págs. 7-8.
El aviso de infracción se expide cuando se realiza una inspección, mas no siempre que se realice una investigación; ambos términos no son sinónimos. La Regla 7 del Reglamento claramente distingue entre ambos conceptos al indicar que “ [1] a investigación que realiza el Departamento, incluye, pero no se limita a, inspecciones de campo, requerimientos de información [...] estudios y revisión de información, documentos, anuncios o pautas en cualquier medio de comunicación”. íd., Regla 7, pág. 5. Por lo tanto, a pesar de que la revisión de los anuncios pautados para una *783 venta especial constituye un tipo de investigación, no constituye una inspección de campo que active el requisito de emitir un aviso de infracción. Más bien, el aviso de infracción debe emitirse cuando, por la naturaleza misma de una inspección que requiera visitar el establecimiento del comerciante, pueda verse afectado el derecho de la parte infractora a preparar una defensa adecuada, según exige el debido proceso de ley. Por ejemplo, la Regla 8(B) exige que el aviso de infracción incluya una “descripción de las circunstancias en que se realiza la inspección: lugar, fecha, hora en que se emitió el aviso, nombre de la persona o personas que reciben la infracción y su posición dentro de la estructura organizacional del negocio o institución investigada”. íd., Regla 8(B)(2), pág. 8. Este tipo de información sería redundante para defenderse de una multa impuesta por infracciones al esquema aplicable a anuncios de venta especial, pues la infracción surge de anuncios impresos en miles de periódicos y no requiere una visita al establecimiento del comerciante para ser investigada.
Otras disposiciones del Reglamento para la imposición de multas abonan a interpretar que los avisos de infracción sólo aplican a investigaciones realizadas mediante inspecciones de campo en los establecimientos del infractor. La Regla 9 dispone que el Daco debe notificar una multa administrativa “dentro del término de veinte (20) días contados a partir de la fecha en que se emitió el aviso de infracción”. íd., Regla 9, pág. 9. Este término tan corto sólo se justifica si consideramos que las infracciones que surjan producto de una inspección, por la propia naturaleza de la infracción, requieren que el infractor mismo preserve la prueba que utilizará para defenderse adecuadamente.
De igual forma, el Reglamento para la imposición de multas autoriza al Daco a expedir avisos de orientación para informar a los comerciantes sobre prácticas o actuaciones que pueden constituir infracciones a las leyes y reglamentos que administra. íd., Regla 5(B), pág. 3. Un aviso *784 de orientación tiene el propósito de informar a la parte infractora “que si incurre nuevamente en una infracción [al ordenamiento del Daco] o si no corrige la deficiencia señalada en el periodo de tiempo especificado en el aviso de orientación, podrá ser sancionado con una multa administrativa”. íd., Regla 8(A)(7), pág. 7. Evidentemente, el Reglamento incluye la potestad del Daco de imponer multas a raíz de un aviso de orientación sin que medie un aviso de infracción alguno.
Además, la Regla 10(A) indica las cuantías aplicables a las multas producto de un aviso de infracción, expedidas durante inspecciones realizadas por los oficiales del Daco. A tales efectos, indica la cuantía de las multas que se emitan en virtud de “[a]visos de Infracción expedidos por violación a disposiciones independientes de las Leyes y Reglamentos bajo la jurisdicción del Departamento, durante una visita rutinaria”. (Énfasis suplido). íd., Regla 10(A), pág. 11.
Las Reglas 8 y 10 no implican que los avisos de infracción son la única forma de iniciar un proceso adjudicativo para imponer una multa, pues la propia Ley Orgánica del Daco, el Reglamento contra prácticas y anuncios engañosos, el Reglamento para la imposición de multas y la LPAU permiten que sea el mismo Daco quien presente una querella o inicie una investigación por violaciones a las leyes y reglamentos que administra. El Artículo 6(J) de la Ley Orgánica del Daco, 3 LPRA see. 341, lo autoriza a fiscalizar los anuncios y las prácticas engañosas en el comercio. Conforme a la Sección 3.4 de la LPAU, 3 LPRA see. 2154, el Daco tiene facultad para iniciar una querella por infracción a sus reglamentos, motu proprio, sin que algún consumidor presente una querella o queja. La Regla 6 del Reglamento para la imposición de multas permite que “[e]l Departamento a iniciativa propia o como producto de una queja o querella, inici[e] la investigación de todas aquellas situaciones bajo su jurisdicción”. Reglamento Núm. 7750, *785 supra, Regla 6, pág. 4. Finalmente, la Regla 31 del Reglamento contra prácticas y anuncios engañosos establece que “[e]l Secretario queda facultado para expedir avisos, órdenes de hacer o no hacer, cesar y desistir, e imponer sanciones y multas administrativas por lo máximo permitido en la Ley Orgánica del Departamento de Asuntos del Consumidor por infracción, por cualquier incumplimiento de las disposiciones de este Reglamento, o de las órdenes y resoluciones emitidas bajo el mismo”. Reglamento Núm. 7751, supra, Regla 31, pág. 44.
Al incluir el mecanismo de aviso de infracción en su reglamento, el Daco ha decidido ir más allá de los requisitos estatutarios de la LPAU y su Ley Orgánica y conceder unas garantías adicionales de forma tal que la parte infractora esté en posición de defenderse adecuadamente de las infracciones investigadas mediante inspección. De ninguna forma puede entenderse que las Reglas 8 y 10 del Reglamento para la imposición de multas limitan cómo el Daco puede iniciar un proceso de imposición de multas. Las reglas aplicables a los avisos de infracción buscan preservar el derecho del infractor a preparar una defensa adecuada en la circunstancia específica de una infracción que requiera una inspección para ser investigada.
»—i H-[ J-H
Discutida la normativa aplicable, pasemos a evaluar la controversia ante nuestra consideración.
TRU alegó que indicar en sus anuncios de venta especial que la cantidad disponible de los bienes era de un mínimo de uno por tienda no infringe la Regla 13(A) del Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra. No le asiste la razón. El Reglamento indica clara y adecuadamente los requisitos aplicables a los anuncios de venta especial. Para eximirse de la responsabilidad de ofrecer artículos sustitutos, vales o una compensación *786 en efectivo cuando el bien anunciado no esté disponible, el anuncio de venta especial debe indicar clara y adecuadamente la cantidad de los bienes que el comerciante tendrá disponible. Contrario a lo que concluye hoy una mayoría de este Tribunal, la obligación de TRU no sólo era tener cierta cantidad de mercancía disponible, sino anunciar su venta especial de forma clara y adecuada para los propósitos mismos del Reglamento.
Al expresar que la cantidad de los bienes anunciados será de “mínimo uno por tienda”, TRU intentó aprovecharse de los beneficios que otorga la exención de la Regla 13 sin cumplir con sus requisitos, tal y como concluyó el Daco. Hoy una mayoría de este Tribunal avala ese tortuoso proceder. De ninguna forma puede entenderse que utilizar la frase “mínimo uno por tienda” cumple con el requisito de establecer clara y adecuadamente la cantidad disponible del bien anunciado. Durante la vista administrativa, el propio TRU reconoció que la cantidad declarada en sus anuncios no reflejó la cantidad real de los bienes que tenían disponible:
P: ¿Y entonces, qué decidieron en ese espacio de “disponible” o “mínimo tanto por tienda”?
R: En ese caso lo que [...] o sea, se tomó la determinación de decir: “Pues, mira, vamos a poner ‘mínimo uno por tienda’. Se puso el uno por tienda porque se sobreentendía que al poner mínimo era lo menos que iba a haber. A lo mejor en una tienda iba a haber quince pero, por lo menos, iba a haber uno: por la cuestión del factor tiempo, o sea, que no podíamos, no teníamos tiempo suficiente para rehacer toda esa matemática que conlleva para dar una [...] cuántos artículos van a haber en ese “shopper”. (Enfasis suplido). Transcripción de la vista administrativa, pág. 39.
Además, TRU contaba con la Interpretación del Secretario del Daco 2009-02, la cual abundaba ampliamente sobre los pormenores aplicables al esquema para anuncios de ventas especiales.
No podemos perder de vista que el Reglamento contra prácticas y anuncios engañosos busca que los consumido *787 res cuenten con la información necesaria y correcta al momento de tomar decisiones. Contrario a lo alegado por TRU —y tal como sostiene hoy una mayoría de este Tribunal—, las infracciones que dieron lugar a las multas no ocurrieron por meramente utilizar la frase “mínimo”, sino por no indicar clara y adecuadamente la cantidad de bienes anunciados en venta especial. Meramente indicar que habrá un mínimo de un artículo por tienda podrá ser cierto, pero es impreciso y burla el propósito del Reglamento contra prácticas y anuncios engañosos: colocar al consumidor en posición de tomar una decisión informada sobre los bienes y servicios anunciados. El hecho de que ningún cliente haya presentado una querella ante el Daco no constituye impedimento alguno para que el Daco fiscalice sus reglamentos y las leyes que administra. Por todo lo anterior, confirmaríamos la determinación del foro apelativo intermedio que sostuvo que TRU incumplió las exigencias de la Regla 13(A) del Reglamento contra prácticas y anuncios engañosos Núm. 7751, supra.
Por su parte, TRU sostiene que el Daco incumplió su obligación de expedir avisos de infracción según requiere la Regla 8(B) del Reglamento para la imposición de multas, supra. Tampoco le asiste la razón. La Regla 8(A) indica que cuando se realiza una inspección de campo mediante visita física el Daco está obligado a emitir un aviso de infracción. En este caso las multas notificadas fueron producto de una investigación realizada por un funcionario del Daco en sus propias oficinas. Su reglamento sencillamente no exige —y la lógica impide— investigar este tipo de infracción mediante una inspección de campo.
La propia mayoría reconoce que “pueden surgir situaciones en las que es innecesario cumplir con la Regla 8 del Reglamento para la imposición de multas”. (Citas omitidas). Sentencia del Tribunal, pág. 13. No obstante, la mayoría entiende que la naturaleza de las infracciones imputadas a TRU requiere que el Daco realice una inspección física, por *788 lo que en este caso no se cumple con la posible excepción. Al así proceder, la mayoría ignora el propósito principal del Reglamento contra prácticas y anuncios engañosos: proteger al consumidor ante los anuncios imprecisos y engañosos. Contrario a lo resuelto por este Tribunal —y según hemos reseñado en este voto— el daño que intenta evitar el Reglamento ocurre con la publicación misma del anuncio y resulta ilógico requerir inspección de campo para verificar un anuncio de venta especial publicado en un periódico.
Recibir un aviso de infracción tampoco sería útil para que TRU prepare una defensa adecuada, pues la naturaleza de la infracción no requiere que TRU tome medida alguna para evaluar la investigación que realizó el Daco o preservar evidencia. De hecho, TRU sólo alega que procede revocar las multas porque el Daco incumplió con su propio Reglamento, sin expresar de forma alguna cómo dicho incumplimiento le afectó su derecho a preparar una defensa adecuada.
Adicionalmente, TRU sostiene que la Regla 10 del Reglamento para la imposición de multas, supra, limita el número de avisos de infracción que puede emitir el Daco luego de una visita, por lo que el Daco abusó de su discreción al emitir varias multas por una sola violación a la Regla 13(A)(1) del Reglamento contra prácticas y anuncios engañosos, supra. El Daco concluyó que emitió 93 querellas contra TRU y no avisos de infracción, como arguye TRU. Anteriormente explicamos las razones por las cuales procede descartar la aplicación de la Regla 8 del Reglamento para la imposición de multas, supra, a esta controversia. Debido a que el Daco no está obligado a realizar inspección de campo alguna ni emitir un aviso de infracción, la Regla 10(A) no aplica a las multas que impugna TRU, por lo que no se cometió el error señalado.
El propósito de la Regla 10 es limitar la cuantía de las multas impuestas cuando surjan “durante una visita rutinaria” de sus investigadores. Reglamento Núm. 7750, supra. De ninguna forma implica que sólo se puede emitir *789 una multa por varias violaciones a la misma disposición. El propio Reglamento contra prácticas y anuncios engañosos permite imponer multas por cada anuncio que viole sus disposiciones, y cada bien o servicio anunciado constituye un anuncio independiente:
Anuncio — cualquier manifestación oral, escrita, gráfica, pictórica, electrónica o de cualquier forma presentada, hecha con el propósito de ofrecer, describir o de cualquier otra forma representar un bien o servicio o algún aspecto de un bien o servicio. (Énfasis suplido). Reglamento Núm. 7751, supra, Regla 5(B), pág. 3.
El “shopper” que publicó TRU no es un solo anuncio, pues según el Reglamento contra prácticas y anuncios engañosos cada anuncio de un bien anunciado es un anuncio independiente que debe cumplir a cabalidad con las exigencias del esquema para ventas especiales.
Asimismo, la conclusión del Daco de que emitió 93 querellas contra TRU es una determinación de hecho, por lo que goza de una presunción de regularidad y corrección, y le corresponde a TRU producir evidencia suficiente para derrotarla. Otero, supra, pág. 728. TRU no ha presentado esta evidencia. Tampoco encontramos que el Daco haya errado al interpretar sus reglamentos o que sus determinaciones carezcan de evidencia sustancial que las apoye. Por lo tanto, el Daco no abusó de su discreción al imponer multas individuales por las 93 violaciones independientes que cometió TRU.
IV
Conforme a lo anterior, indicar que como mínimo habrá uno de los bienes anunciados en venta especial no satisface los requisitos de la Regla 13 del Reglamento contra prácticas y anuncios engañosos. Asimismo, el requisito de la Regla 8 del Reglamento para la imposición de multas de emitir un aviso de infracción antes de notificar una multa sólo aplica cuando la infracción y la multa proceden de una *790 inspección realizada por el Daco. El Reglamento para la imposición de multas tampoco es óbice para que el Daco imponga una multa por cada anuncio deficiente incluido en un “shopper”, pues cada bien anunciado constituye un anuncio independiente que debe cumplir con las exigencias del Reglamento contra prácticas y anuncios engañosos.
Por todo lo anterior, disiento de la sentencia emitida por este Tribunal. En vez, confirmaría la sentencia del Tribunal de Apelaciones que sostuvo la imposición de 93 multas por parte del Daco.

 La fecha de vigencia de la venta especial fue del 15 al 21 de noviembre.

 Las fechas de vigencia de los anuncios de venta especial fueron del 6 al 12 de diciembre y del 13 al 19 de diciembre.

 El Reglamento Núm. 7751 derogó los reglamentos 7402 y 7581. A su vez, el Reglamento Núm. 7751 fue derogado por el Reglamento contra prácticas y anuncios engañosos Núm. 7932 de 15 de octubre de 2010.