Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| PASEO DEL PRADO SHOPPING CENTER<br><br>Parte Recurrente<br><br>V.<br><br>OFICINA DE GERENCIA DE PERMISOS<br><br>Agencia Recurrida<br><br>ASOCIACIÓN DE RESIDENTES DEL PASEO DEL PRADO, INC.<br><br>Parte Recurrida | KLRA202400604 | Revisión procedente de la Oficina de Gerencia de Permisos<br><br>Caso Núm. 2024-585400-SDR-301102<br><br>Sobre: Resolución en cuanto a Permiso de Construcción |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de enero de 2025.

Comparece Paseo del Prado Shopping Center, Inc. (en adelante, Paseo del Prado o Recurrente) y solicita que revisemos una *Resolución de Revisión Administrativa* emitida el 25 de septiembre de 2024 por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe). Mediante dicho dictamen, la OGPE dejó sin efecto el Permiso de Construcción 2022-441641-PCOC-300633. Concluyó que la consulta de ubicación 2019-286752-CUB-001483 había perdido vigencia cuando se presentó la solicitud de dicho permiso.

Tras evaluar el expediente ante nuestra consideración, adelantamos que confirmamos el proceder del foro recurrido. Explicamos.

**-I-**

El caso ante nuestra consideración tiene su génesis con la presentación de la consulta de ubicación número 2019-286752-CUB-001483 para la construcción de un proyecto comercial en la carretera PR-3, Barrio Martín González del Municipio de Carolina, Puerto Rico.[1]

El solar del proyecto tiene la siguiente descripción según escritura:

> **"RÚSTICA":** Predio de terreno radicado en los Barrio[s] Martín González y San Antón del T[é]rmino Municipal de Carolina, Puerto Rico, identificada en el plano como PARCELA "D", con una cabida superficial de SIETE MIL OCHOCIENTOS CUARENTA Y SIETE PUNTO SESENTA Y UNO (7,847.661) METROS CUADRADOS, equivalentes a UNO PUNTO NOVECIENTOS NOVENTA Y SIETE (1.997) CUERDAS, en lindes por el norte y oeste, con la parcela "A" del plano de inscripción; por el sur, con la una "vieja" calle de acceso y terrenos propiedad del Colegio Bautista; y por el ESTE, con las parcelas "C-1" y "C-2" del plano de Inscripción."[2]

La calificación del predio es Residencial Tres (R-3) y el proponente solicita un cambio de calificación a Comercial Intermedio (C-I).[3]

El 25 de junio de 2021, se celebró una vista pública. Durante la vista, la Asociación de Residentes de Paseo del Prado, Inc. (Asociación de Residentes o Recurrida) y varios residentes de dicha urbanización participaron activamente. Posteriormente, el Comité de Permisos del Gobierno Municipal Autónomo de Carolina (GMAC) en su reunión de 29 de septiembre de 021, recomendó al Oficial de Permiso, Director del Departamento de Permisos Urbanísticos (DPU), Autorizar Condicionada la consulta. Estudiado el caso, el Director del DPU autorizó la consulta condicionada mediante *Resolución.* Mediante esta, dispuso que el proyectista deberá someter las recomendaciones y endosos de las agencias con

---

[1] Apéndice 13 del Recurso, págs. 375-385.
[2] Apéndice 13 del Recurso, págs. 375-385.
[3] Apéndice 1 del Recurso, págs. 1-19.

inherencia para las próximas etapas en la fase de permisos. Advirtió, además, que este acuerdo estaría vigente por dos (2) años.[4]

Así las cosas, el 20 de diciembre de 2023, el Recurrente presentó la solicitud de permiso de construcción 2022-441641-PCOC-300633 para desarrollar el proyecto comercial autorizado en la consulta de ubicación. Paseo del Prado anejó un *Memorial Explicativo*.[5]

El 20 de mayo de 2024, el DPU emitió el Permiso de Construcción 2022-441641-PCOC-300633.[6]

Inconforme, el 27 de junio de 2024, la Recurrida presentó ante la OGPe la *Solicitud de Revisión Administrativa*, en la cual solicitó la revisión de la determinación emitida por el Departamento de Permisos Urbanísticos del Gobierno Municipal Autónomo de Carolina (OMPU) el 20 de mayo de 2024, otorgando el Permiso de Construcción 2022-441641-PCOC-300633.[7]

Mediante *Notificación Acogiendo Solicitud de Revisión Administrativa* de 11 de julio de 2024, la OGPe acogió la *Solicitud de Revisión Administrativa*.[8]

El 15 de julio de 2024, la OGPe emitió una *Orden Señalando Vista*.[9] Sin embargo, el 24 de julio de 2024, el Recurrente presentó una *Moción Solicitando Transferencia de Vista*.[10] Mediante *Orden de Reseñalamiento*, el 29 de julio de 2024, la OGPe señaló la vista de revisión para el día 9 de agosto de 2024.[11]

Celebrada la vista, el 23 de agosto de 2024, Paseo del Prado presentó su *Oposición a la Solicitud de Revisión Administrativa*.[12] Por

---

[4] Apéndice 1 del Recurso, págs. 1-19.
[5] Apéndice 10 del Recurso, págs. 207-247.
[6] Apéndice 12 del Recurso, págs. 369-374.
[7] Apéndice 10 del Recurso, págs. 184-352.
[8] Apéndice 9 del Recurso, págs. 179-183.
[9] Apéndice 6 del Recurso, págs. 39-44.
[10] Apéndice 5 del Recurso, págs. 36-38.
[11] Apéndice 4 del Recurso, págs. 32-35.
[12] Apéndice 8 del Recurso, págs. 62-178.

su parte, el 6 de septiembre de 2024, la Asociación de Residentes presentó su *Réplica a la Oposición de la Parte Recurrida.*[13]

Luego, el Recurrente presentó una *Moción Informando Representación y Sometiendo Documento* el 19 de septiembre de 2024.[14] En su contra, la Asociación de Residentes presentó una *Oposición a Moción Informando Representación Legal y Sometiendo Documento* el 23 de septiembre de 2024.[15]

Finalmente, el 25 de septiembre de 2024, la OGPe emitió una *Resolución de Revisión Administrativa,* notificada ese mismo día. Mediante esta, el foro recurrido declaró Ha Lugar la solicitud de revisión administrativa 2024-585400-SDR-301102 y revocó la aprobación del Permiso de Construcción 2022-441641-PCOC-300633.[16]

Insatisfecho con dicho proceder, el 25 de octubre de 2024 Paseo del Prado acudió ante nosotros mediante el *Recurso de Revisión Administrativa* e imputó la comisión de los siguientes errores:

> ERRÓ LA OGPE AL DETERMINAR QUE LA CONSULTA DE UBICACIÓN 2019-286752-CUB-001483 HABÍA PERDIDO VIGENCIA CUANDO SE PRESENTÓ LA SOLICITUD DEL PERMISO DE CONSTRUCCIÓN 2022-441641-PCO-300633.
>
> ERRÓ LA OGPE AL DETERMINAR QUE EL RECURRENTE NO HAB[Í]A CUMPLIDO CON LAS CONDICIONES IMPUESTAS EN LA CONSULTA DE UBICACIÓN 2019-286752-CUB-001483, ENTRE ESTAS UN ESTUDIO HIDROL[Ó]GICO-HIDR[Á]ULICO Y UN ESTUDIO DE ACCESOS.
>
> ERRÓ LA OGPE AL DETERMINAR QUE EL RECCURENTE ESTABA PRESENTANDO UN PROYECTO DISTINTO AL APROBADO EN LA CONSULTA DE UBICACIÓN.

Por otro lado, el 2 de diciembre de 2024, la Asociación de Residentes presentó un *Alegato en Oposición a Recurso de Revisión Administrativa.*

---

[13] Apéndice 7 del Recurso, págs. 45-61.
[14] Apéndice 3 del Recurso, págs. 26-31.
[15] Apéndice 2 del Recurso, págs. 20-25.
[16] Apéndice 1 del Recurso, págs. 1-19.

El 7 de diciembre de 2024, se presentó el *Alegato de la OGPe en cuanto a Recurso de Revisión.*

**-II-**

**-A-**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley 38-2017, 3 LPRA sec. 9672, autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido en nuestro ordenamiento jurídico administrativo que los tribunales deben brindarle la mayor deferencia posible a las decisiones administrativas por estas gozar de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Lo anterior encuentra su base en que son los entes administrativos quienes ostentan el conocimiento especializado sobre los asuntos que les son delegados en virtud de alguna ley. *Asoc. Fcias. v. Caribe Specialty et. al. II*, 179 DPR 923 (2010).

En este sentido, nuestro más alto foro ha dispuesto que la deferencia que se le brinda a las decisiones administrativas cederá únicamente cuando las mismas no se encuentren basadas en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. De Carolina*, 185 DPR 800 (2012). Adicionalmente, el Tribunal Supremo ha sostenido que también debe ceder la actuación administrativa cuando esta lesione derechos constitucionales fundamentales. *IFCO Recycling v. Aut. Desp. Sólidos, supra.*

En fin, la revisión judicial de una resolución administrativa sólo pretende determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción. *Mun. de San Juan v. J.C.A.*, 149 DPR 263 (1999); *T-JAC, Inc. v. Caguas Centrum Limited,* 148 DPR 70 (1999). Si las interpretaciones de la agencia

especializada son razonables y consecuentes con el propósito legislativo de su ley habilitadora, este Tribunal debe abstenerse de intervenir con ellas. *Costas, Piovannetti v. Caguas Expressway*, 149 DPR 881 (2000).

**-B-**

La Junta de Planificación es el organismo gubernamental creado con el propósito de desarrollar los recursos humanos, económicos, ambientales y físicos de forma coordinada para crear las condiciones necesarias que propendan al desarrollo integral de la sociedad. *Mun. De San Juan v. Bosque Real,* 158 DPR 743 (2003). Para evadir la rigidez del esquema de zonificación, la Junta ha establecido reglamentos para dirigir los procedimientos de las consultas de ubicación. *Íd.* Una consulta de ubicación es el instrumento mediante el cual la Junta de Planificación de Puerto Rico autoriza el uso particular de un terreno. *Misión Ind. PR v. Junta de Planificación,* 146 DPR 46 (1998). A través del mismo, la Junta evalúa y decide, según estime pertinente, los propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que son provistos por las disposiciones reglamentarias para su consideración. *Íd.* Finalmente, destacamos que la Junta tiene gran discreción en el ejercicio de su facultad de evaluar las consultas de ubicación; sin embargo, está sujeta al cumplimiento de las normas y requisitos establecidos en la ley y en la jurisprudencia. *T-JAC, Inc. v Caguas Centrum Limited*, supra.

El Art. 4 de la Ley Núm. 142-2012 dispuso que los términos de vigencia dispuestos en la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 LPRA secc. 9011, *et seq.,* así como en los reglamentos promulgados a su amparo, no le aplicarán a las consultas de ubicación aprobadas antes de la vigencia de la referida ley hasta que mediaran enmiendas al

Reglamento de Permisos para Obras de Construcción y Usos de Terrenos (el Reglamento Conjunto) a los fines dispuestos en la misma. A tono con este mandato estatutario, el 24 de marzo de 2015 la Junta enmendó y aprobó el Reglamento Conjunto del 2015. No obstante, el 21 de diciembre de 2016 un Panel hermano dispuso en el caso de *Morales Vargas v. Junta de Planificación, supra,* que el Reglamento Conjunto del 2015 era radicalmente nulo. Esto llevó a que la Junta emitiera la *Resolución JPI-31-10-2017* la cual, entre otras cosas, dispuso que las consultas de ubicación se mantendrían vigentes hasta que se adoptaran enmiendas al Reglamento Conjunto o se adoptara uno nuevo. Posteriormente, la JP aprobó un Reglamento Conjunto para el 2019 y uno para el 2020, también anulados, y el Reglamento Conjunto para el 2023. En cuanto a la vigencia de consultas de ubicación y transacciones cuya vigencia fue extendida por la Ley Núm. 142-2012, el Art. 2.1.4 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios según aprobado para los mencionados años tienen disposiciones idénticas, a saber:

> *Aquellas consultas de ubicación y transacciones de terrenos públicos cuya vigencia se mantuvo en virtud de la Ley Núm. 142 de julio de 2012 se prolongarán conforme a lo siguiente:*
>
> a. *Dos (2) años o veinticuatro (24 meses) para las consultas de ubicación privadas a partir de la fecha de vigencia del Reglamento Conjunto.*
>
> b. *Cuatro (4) años o cuarenta y ocho meses para consultas de ubicación o transacciones públicas, a partir de la vigencia del Reglamento Conjunto.*

**-III-**

En su primer señalamiento de error, Paseo del Prado sostiene que erró la OGPe al determinar que la consulta de ubicación 2019-286752-CUB-001483 había perdido vigencia cuando se presentó la solicitud del permiso de construcción 2022-441641-PCO-300633. No le asiste la razón.

Surge del expediente administrativo y de la prueba presentada que se incumplieron con las condiciones establecidas en la Resolución de Revisión Administrativa. En este sentido, la DRA concluyó que Paseo del Prado incumplió las condiciones establecidas en la Resolución de Autorización Condicionada en cuanto al estudio H-H y el estudio de accesos. Además, se presentó un proyecto distinto en el trámite del Permiso de Construcción que el aprobado en la consulta de ubicación núm. 2019-286752-CUB-001483.

Contrario a lo que alega el Recurrente, el periodo de la vigencia de la consulta de ubicación núm. 2019-286752-CUB-001483 fue establecida en la propia Resolución de Autorización Condicionada, y no en el Reglamento Conjunto de 2020. Tal y como surge del expediente, la Resolución de Autorización Condicionada dispuso y sujetó su vigencia o efectividad a que la solicitud del Permiso de Construcción se presentara dentro de los dos (2) años de notificada la Resolución.

Es decir, no debe haber confusión con el término otorgado. Ante ello, consideramos improcedente ampararse en medidas adoptadas para casos en los que sí existe ambigüedad sobre el periodo de vigencia de determinada autorización pues ello, conforme a lo antes discutido no ocurre en el caso que nos ocupa. Al presentarse fuera del término establecido, el Recurrente incumplió con una condición expresa de la Resolución.

La documentación evaluada demuestra que el Departamento de Permisos Urbanísticos del Gobierno Municipal Autónomo de Carolina (OMPU) advirtió expresamente sobre la vigencia de la consulta a partir de su notificación y que de no obtenerse la próxima etapa, la del permiso de construcción, el caso se consideraría desistido, quedando el mismo archivado para todos los efectos legales.

En su segundo señalamiento de error, el Recurrente aduce que erró la OGPe al determinar que el recurrente no había cumplido con las condiciones impuestas en la consulta de ubicación 2019-286752-CUB-001483, entre estas un estudio hidrológico-hidráulico y un estudio de accesos. No nos convence.

En la discusión de este error, el Recurrente alega que se preparó el estudio hidrológico-hidráulico pero que el estudio no tenía que estar en el expediente administrativo del caso. La discusión no cuenta con una justificación satisfactoria para incumplir con un requerimiento expreso de la resolución de la consulta de ubicación núm. 2019-286752-CUB-001483.

Surge de las determinaciones de hechos que la DRA no identificó un estudio hidrológico-hidráulico del predio objeto de revisión ni un estudio de acceso del proyecto objeto de revisión. Es un hecho incontrovertido que en la Resolución de Autorización Condicionada se exigió la preparación del estudio hidrológico-hidráulico como condición para la autorización del Proyecto. También es un hecho no controvertido que el estudio hidrológico-hidráulico no forma parte del expediente administrativo del proceso del Permiso de Construcción.

Además, el Recurrente alega que aunque el estudio de acceso no es requerido en este tipo de casos y la consulta de ubicación continuaba vigente, y se comprometió a realizar el estudio de acceso. Sin embargo, el ordenamiento no funciona de esta manera. De ordinario se debe demostrar con el cumplimiento *a priori* con los requisitos para la obtención de un permiso.

Como tercer y último señalamiento de error, Paseo del Prado arguye que erró la OGPe al determinar que el recurrente estaba presentando un proyecto distinto al aprobado en la consulta de ubicación. Tampoco tiene razón.

De la propia discusión de Paseo del Prado surge que el proyecto aprobado en la consulta de ubicación núm. 2019-286752-CUB-001483 fue modificado durante el proceso. Sin embargo, alegó que los cambios no ameritaban una enmienda a la consulta, pues es más pequeño que el autorizado.

Estudiado el expediente ante nos, el Recurrente omite otros cambios que, en conjunto, constituyen un cambio significativo. El cambio de número a 16 locales y la adición de un segundo servi-carro constituyen un cambio significativo debido a las condiciones del tránsito vehicular existentes en la zona del proyecto. Es forzoso concluir que la OGPe no erró al determinar que el recurrente estaba presentando un proyecto distinto al aprobado en la consulta de ubicación.

En el caso ante nuestra consideración, no se cometieron los errores señalados.

**-IV-**

Por los fundamentos que anteceden, confirmamos la determinación de la OGPe.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones