ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| MARÍA DEL CARMEN CORDERO MARTÍNEZ<br><br>Parte Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2025RA00225 | Revisión Judicial procedente del Departamento de Corrección y Rehabilitación, Informe Disciplinario<br><br>Caso Número: 220-25-055<br><br>Sobre: Informe de Querella de Incidente Disciplinario |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 7 de octubre de 2025

Comparece la señora María del Carmen Cordero Martínez ("Sra. Cordero" o "Recurrente") y solicita que revisemos una determinación emitida el 9 de julio de 2025 por el Departamento de Corrección y Rehabilitación ("DCR") en la que encontró a la Recurrida incursa en violación de los códigos 101, 148, 208 y 222 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional* ("Reglamento Núm. 9221").

Por los fundamentos que exponemos a continuación, se ***confirma*** la determinación emitida por el DCR.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe.

El 21 de febrero de 2025 la Oficial Correccional Jeannette Santiago presentó un informe negativo sobre la Recurrida. En esa ocasión, alegó que la Sra. Cordero incurrió en las siguientes faltas: "*Abandono de Trabajo, Grupo o*

*Actividad*", "*Documento, Carta, Comunicación Clandestina*", "*Contrabando*", "*Estar en Área No Autorizada*" y "*Abuso o Mal Uso de Privilegios*"[1]. Según se desprende del *Informe de Querella de Incidente Disciplinario*[2], la confinada se encontraba en un taller de cocina cuando se dirigió al módulo A y le entregó un papel a la reclusa Verónica Sastre (Sra. Sastre). En ese momento, la Querellante Jeannette Santiago interceptó a la Sra. Sastre y le ordenó entregarle lo que recibió de la Recurrente. La Sra. Sastre acató la orden y le indicó a la Querellante que se trataba de una carta de amor.

El 8 de abril de 2025 se celebró una vista disciplinaria, donde se encontró a la Recurrente incursa en violación a los códigos 101[3], 148[4], 208[5] y 222[6]. Como consecuencia de lo anterior, la Sra. Cordero fue privada de privilegios por el término de setenta días naturales. Inconforme con dicha determinación, el 1 de mayo de 2025, la Recurrente presentó una solicitud de reconsideración[7]. El 9 de julio de 2025, el DCR acogió la solicitud y la declaró *No Ha Lugar*, de forma que se mantuvo la sanción impuesta[8]. En esa ocasión, la Agencia concluyó que la Sra. Cordero no presentó evidencia que sustentara su posición. Además, la Agencia señaló que el expediente administrativo incluyó evidencia preponderante y robusta que la Recurrente no logró derrotar[9].

---

[1] Véase *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional*, Reglamento Núm. 9221, Departamento de Estado, 6 de octubre de 2020, págs. 26, 38, 40, 41 y 44. Además, véase Apéndice #2 del recurso de revisión administrativa.
[2] Véase Apéndice #1 del recurso de revisión administrativa.
[3] Abandono de Trabajo, Grupo o Actividad.
[4] Documento, Carta, Comunicación Clandestina.
[5] Estar en Área No Autorizada.
[6] Abuso o Mal Uso de Privilegios.
[7] Véase Apéndice #2 del recurso de revisión administrativa.
[8] *Íd*.
[9] Véase Entrada #2 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC)

Así las cosas, el 28 de julio de 2025 la Sra. Cordero fue notificada de la determinación[10]. Inconforme, acudió ante nos mediante recurso de revisión judicial y alegó que la Querella Disciplinaria incumplió con los requisitos que impone la Regla 6[11] para tales procedimientos. En particular, la Recurrente alega que la Querella incumplió con los incisos 1[12], 5[13] y 6[14] del Inciso A de la mencionada regla.

-II-

## A. Revisión judicial y doctrina de Deferencia Judicial

La *Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico*[15] ("LPAUG") establece los derechos que cobijan a toda persona que enfrenta un procedimiento adjudicativo ante una agencia. En parte pertinente, la Sección 3.1 dispone lo siguiente:

> En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:
>
> (A)  Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
> (B)  Derecho a presentar evidencia.
> (C)  Derecho a una adjudicación imparcial.
> (D)  Derecho a que la decisión sea basada en el expediente[16].

Por otra parte, la sección 4.1 de la LPAUG dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones[17]. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable.[18] Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los

---

[10] *Íd.*
[11] Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, *supra*, págs. 14-18.
[12] Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente.
[13] Manejo de la prueba.
[14] Nivel y código correspondiente al acto prohibido imputado.
[15] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[16] Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017 (3 LPRA § 9641).
[17] Sección 4.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017 (3 LPRA § 9671).
[18] *Empresas Ferrer, Inc. v. A.R.P.E.*, 172 DPR 254, 264 (2007).

tribunales apelativos le conceden gran consideración y deferencia. La Sección 4.5 de la LPAUG establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "*evidencia sustancial que obra en el expediente administrativo*"[19]. Sin embargo, esta sección dispone que las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[20]

A pesar del trato diferente que dispone la LPAUG para las conclusiones de derecho, los tribunales les brindan deferencia a las interpretaciones de las agencias administrativas, salvo si esta "*afecta derechos fundamentales, resultare irrazonable o conduce a la comisión de injusticias*".[21] Lo anterior responde a una vasta experiencia y conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados.[22] Por consiguiente, las decisiones administrativas gozan de una presunción de regularidad y corrección que debe respetarse, mientras la parte adversamente afectada no demuestre con suficiente evidencia lo injustificado de la decisión.[23]

La revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal.[24] El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida.[25] Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la

---

[19] Sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017 (3 LPRA § 9675).
[20] *Empresas Ferrer, Inc. v. A.R.P.E.*, *supra*.
[21] *Costa, Piovanetti v. Caguas Expressway*, 149 DPR 881, 889 (1999).
[22] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 614 (2006); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).
[23] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[24] *Vélez v. A.R.Pe.*, *supra*.
[25] *Hernández, Álvarez v. Centro Unido*, *supra*.

agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede.[26]

Ahora bien, la persona que impugna las determinaciones de hecho tiene la obligación de derrotar la decisión del ente administrativo con prueba suficiente.[27] El recurrente debe demostrar que la determinación recurrida no estuvo justificada por una evaluación justa del peso de la prueba admitida por la agencia.[28] Si no se identifica o demuestra la existencia de esa prueba, el tribunal revisor debe sostener las determinaciones de hechos.[29]

**B.    Procedimiento disciplinario en instituciones carcelarias**

El Tribunal Supremo se ha expresado sobre la importancia de preservar la seguridad y el orden en las instituciones carcelarias con el fin de proteger a los empleados, personal administrativo, visitantes y los propios reclusos.[30] En particular, dicho foro expresó lo siguiente:

> El interés en proteger a los miembros del sistema carcelario exige flexibilidad y prontitud en los procedimientos disciplinarios dirigidos a castigar la conducta prohibida de los confinados. Si bien dicha flexibilidad administrativa no puede prestarse para la abdicación de las protecciones que reconoce nuestro ordenamiento, es preciso formular un balance entre ambos intereses. Al hacerlo, debemos también considerar nuestras expresiones pasadas en el sentido de que la Administración de Corrección merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias.[31]

---

[26] *Empresas Ferrer, Inc. v. A.R.Pe.*, *supra*, pág. 264.
[27] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[28] *Íd.*
[29] *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).
[30] *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 333 (2009).
[31] *Íd.,* págs. 333-334.

Conforme con el poder de reglamentación, el DCR adoptó el Reglamento Núm. 9221. La Regla 6 este Reglamento establece los asuntos pertinentes a la querella disciplinaria. Sobre este particular la Regla señala lo siguiente:

> Cualquier persona, visitante, miembro de la población correccional, empleado civil de la institución, oficial correccional, funcionario del Departamento de Corrección y Rehabilitación o empleado de otra agencia que trabaje en la institución, puede presentar una querella contra un miembro de la población correccional, utilizando el formulario suministrado para tales propósitos, en las siguientes circunstancias:
>
> 1. Cuando sea víctima de un acto o incidente prohibido provocado por un miembro de la población correccional; o
>
> 2. Cuando sea testigo de un acto o incidente prohibido, o infracción a las normas y reglamentos del Departamento de Corrección y Rehabilitación por parte de un miembro de la población correccional.
>
> 3. **Tiene motivo fundado para creer que un miembro de la población correccional cometió alguna infracción a las normas o reglamentos del Departamento de Corrección y Rehabilitación;** o
>
> 4. Cuando tenga conocimiento de que un miembro de la población correccional utilizó o presentó una alegación falsa que provocó o intentó provocar el inicio de una investigación por parte de la Oficina de Investigaciones del Sistema Correccional (OISC) o de cualquier otro foro investigativo, de cuyo informe se desprenda, que la alegación se realizó a sabiendas de su falsedad.
>
> 5. Cuando tenga conocimiento de que un miembro de la población correccional provocó o intentó obtener algún cambio o traslado, transacción de personal o cualquier otro en su beneficio basado en una alegación a sabiendas de su falsedad.
>
> 6. Cuando se tenga conocimiento de actos que alteren la provisión de los servicios, ante reclamos viciosos, falsos o improcedentes por parte de uno o varios miembros de la población correccional.[32]

Además, la referida regla detalla el contenido de la querella disciplinaria. A tales efectos, señala lo siguiente:

> La querella disciplinaria se redactará en letra legible, y contendrá la siguiente información:

---

[32] Regla 6 del Reglamento Núm. 9221, págs. 14-15. Énfasis suplido.

1. Una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente;
2. Nombre del miembro de la población correccional querellado;
3. Nombre de los testigos, si alguno;
4. La prueba obtenida;
5. Manejo de la prueba;
6. Nivel y código correspondiente al acto prohibido imputado;
7. Nombre del querellante;
8. Identificación precisa del querellante (puesto, número de placa, posición, lugar de trabajo);
9. Fecha de radicación de querella disciplinaria;
10. Si se obtuvo algún tipo de información confidencial, proceder de acuerdo con lo dispuesto en la Regla 31 y la Regla 32 de este Reglamento.[33]

Por otro lado, el Reglamento Núm. 9221 establece una lista de actos prohibidos, los cuales se clasifican en Nivel I y Nivel II[34]. En lo pertinente al caso de autos, la Regla 14 define los Actos prohibidos de Nivel I de la siguiente forma: "*Actos prohibidos, tentativa de actos prohibidos, como los tipificados en el Código Penal de Puerto Rico como delito grave y en leyes especiales. Violaciones administrativas que por su propia naturaleza y magnitud constituyen riesgo o amenaza a la tranquilidad, la seguridad y el funcionamiento institucional; o a cualquier persona.*"

A su vez, los clasificados bajo el Nivel II son los "*[a]ctos prohibidos, tentativa de actos prohibidos, como aquellos tipificados en el Código Penal de Puerto Rico como delito menos grave y en las leyes especiales. Violaciones administrativas que por su naturaleza o magnitud perturban la paz institucional y no necesariamente constituyen una amenaza a la seguridad institucional.*"[35] En lo concerniente a la controversia de epígrafe, se encuentran en el Nivel I los siguientes:

101. Abandono de Trabajo, Grupo o Actividad – Aquel miembro de la población correccional que forma parte de una brigada, grupo, equipo de trabajo,

---

[33] Íd., págs. 15-16.
[34] Regla 14 del Reglamento Núm. 9221, págs. 25-26.
[35] Íd.

deporte, cualquier actividad recreativa, artística o cultural, que desaparezca, se mueva o no se encuentre en el área designada, sin la autorización o conocimiento del oficial correccional o persona designada con autoridad.

148. Documento, Carta, Comunicación Clandestina – Se prohíbe poseer cualquier documento, carta o comunicación clandestina dentro de la institución. Se entenderá por documento, carta o comunicación clandestina toda correspondencia que no tenga iniciales de algún empleado o funcionario autorizado de la institución, y la cual se encuentre en la posesión del miembro de la población correccional cuyo contenido, además afecte directa o indirectamente la seguridad institucional. Se considerará comunicación clandestina, sin limitarse a esto, cualquier documento, libreta, listado que contenga información referente a deudas y artículos de miembro de la población correccional.

Por otra parte, en lo concerniente al caso de autos, el Nivel II incluye los siguientes actos prohibidos:

208. Estar en Área No Autorizada – Encontrarse o reunirse en un lugar dentro de la institución en el cual el miembro de la población correccional no ha sido autorizado a estar o le está prohibido encontrarse. Incluye:

a. Ausentarse, sin justificación alguna, del área en la que le corresponde estar o en la vivienda, cama o celda asignada por el Departamento de Corrección y Rehabilitación.

b. Encontrarse fuera de su área de vivienda sin su identificación de miembro de la población correccional.

c. Reunirse con otra persona en cualquier lugar dentro o fuera de la institución, sin autorización alguna,

d. entre otros.

222. Abuso o Mal Uso de Privilegios – Consiste en el abuso, arbitrariedad, atropello, extralimitación o mal uso de privilegios concedidos mediante reglamentación por el Departamento de Corrección y Rehabilitación.

Como resultado de los actos prohibidos, la institución puede privar al confinado de los privilegios adquiridos, entre ellos, la recreación activa, actividades especiales, compra en la comisaría y visita[36].

---

[36] Regla 17 del Reglamento Núm. 9221, pág. 50.

-III-

Nuestro ordenamiento jurídico establece que, ante una determinación administrativa, el foro revisor debe brindarle deferencia a la interpretación que hizo la agencia, salvo circunstancias en las que se afecten derechos fundamentales o que la decisión resulte irrazonable o conduzca a la comisión de injusticias. Por tal razón, al revisar las determinaciones del foro administrativo, en un ejercicio de razonabilidad, nos limitaremos a analizar si este actuó de manera arbitraria, ilegal o de modo tan irrazonable que constituyó un abuso de discreción. Además, respecto a la revisión de las determinaciones de hechos, estas deben sostenerse cuando se basen en evidencia sustancial que surja del expediente administrativo.

En el presente caso, la Recurrente alega que el DCR incumplió con la Regla 6 del Reglamento Núm. 9221. Particularmente, la Sra. Cordero señala que la descripción del incidente que surge de la Querella no cumple con el Reglamento. Además, arguye que no hubo un manejo adecuado de la prueba. Ahora bien, es harto conocido que las alegaciones no constituyen prueba, por lo tanto, ante un escenario como el de autos, le corresponde a la Recurrente presentar evidencia de que la decisión del DCR fue injustificada.

Primeramente, debemos señalar que el DCR cumplió con las garantías y derechos que concede la LPAUG en todo procedimiento adjudicativo ante una agencia, a saber: a) derecho a una notificación oportuna; b) derecho a presentar evidencia; c) derecho a una adjudicación imparcial; d) derecho a que la decisión sea basada en el expediente.

Según se desprende de los autos del caso, la Agencia celebró una vista conforme a derecho en la que el Oficial Examinador evaluó la prueba presentada, la cual incluyó el

testimonio de la Sra. Cordero y concluyó que la Recurrente abandonó el taller de cocina y se dirigió a un edificio al cual no estaba autorizada a entrar. Además, el DCR determinó que la Recurrente le hizo entrega de una carta a otra reclusa. Como resultado de lo anterior, se le impuso una sanción a la Recurrente que consiste en la privación de privilegios por un término de setenta (70) días naturales.

De un análisis del recurso en cuestión, podemos colegir que la Recurrente se limitó a hacer alegaciones sin presentar evidencia alguna que ponga a este foro en posición de resolver que la determinación del DCR fue injustificada. Ante tales circunstancias resolvemos que la determinación de la Agencia fue adecuada y razonable. No hay prueba en el expediente que demuestre lo contrario. Siendo así, este tribunal se abstiene de intervenir con la decisión emitida por el DCR.

-IV-

Por los fundamentos que anteceden, ***confirmamos*** la determinación emitida por el Departamento de Corrección y Rehabilitación.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones